Eichaedson, J.,
delivered the opinion of the court:
This is an action brought to recover the amount of an allowance made and certified to the Comptroller of the Treasury by the Commissioner of Internal Bevenue, as a refund, on an internal-revenue special-tax stamp returned.
In order to have a clear understanding of the case, it is necessary to consider the different provisions of the several internal-revenue acts passed prior to the adoption of the Bevised Statutes, as the Assistant Attorney-General bases much of his argument for the defendants upon the language of those acts, in connection with the course of legislation on the subject of the redemption of unused revenue-stamps and the refund of taxes erroneously or excessively assessed.
When the necessities of the Government, growing out of the expenditures caused by the rebellion, required vast sums of money tobe raised, the Act July 1,1862, (12 Stat. L., 432,) was passed to provide internal revenue by the imposition of taxes in a great variety of forms. Section 94 required certain duties to be paid by stamps. Section 102 authorized the sale of these stamps in amounts named, at 5 per cent, discount, and proprietary stamps at 10 per cent., in certain cases. The same section authorized the Commissioner of Internal Bevenue to make regulations for the allowance of such of the stamps issued under the provisions of that act as may have been spoiled or rendered useless or rmfit for the purpose intended, or for which the owner may have no use, or ■fthich, through mistake, may have been improperly or unnecessarily used, or where the rates of *664 duties represented thereby have been paid in error or remitted, subject to a discount of 5'per cent, from their face-value.
By the Act 1S62, (12 Stat. L., 432,) licenses to carry on certain trades and business were required to be taken out and paid for in advance for one year. (§ 57, p. 453, § 64, p. 455.) Brewers were to pay $50, provided that any person who should manufacture less than 500 barrels of beer per year should pay only $25, (p. 456.) Section 35 (p. 445) authorized the refunding of any tax or duty levied or collected wrongfully or unjustly when such duty or tax was paid by levy and distraint.
Then came the Act June 30,1864, (13 Stat. L., 218,) which substantially re-enacted the provisions of the act of 1862, for issuing stamps and making allowances for those spoiled, unused, or unnecessarily used, but, as before, restricting the authority to make such allowances to stamps issued under that act, and continuing brewers’ licenses in the same form and at the same rate. But in section 44 (p. 239) more extended and more liberal provisions were made for refunding duties, authorizing the Commissioner, subject to regulations prescribed by the Secretary of the Treasury, “to remit, refund, and pay back all duties erroneously or illegally assessed or collected, and all duties that shall appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected.” By the Act July 13,1866, (14 Stat. L., 98.) a substitute was enacted (p. Ill) for the forty-fourth section of the act of 1864; but the only change in the language we have quoted was in substituting the word “ taxes ” for “ duties.” The same act raised the rate for brewers’ licenses to $100, with a proviso that if any person should manufacture less than 500 barrels he should pay only $50. Under these provisions it was the practice of the Internal-Revenue Bureau and the Treasury Department to refund to-brewers paying licenses for carrying on their trade or business, so much of the money paid in advance as, at the end of the year, it was made to appear by the extent of their business was excessive in amount or wrongfully collected; and this practice continued until 1872, when important changes were made in the law; and those changes were followed by a change in the regulations.
By the Act June 6,1872, (17 Stat. L., 230,) section 41, (p. 257,)-the provisions of section 161 of tile act of 1864 for allowances on account of stamps spoiled, rendered useless, unnecessarily *665 used, &c., were extended to stamps issued under any internal-revenue act. And the act of December 24 of that year (17 Stat. L., 402) required all special taxes, including those of brewers, to be paid by stamps after April 30,1873, and the Commissioner was authorized to procure stamps for the paymentof such taxes.
In June following, (June 12, 1873,) new regulations were made and approved by the Secretary of the Treasury for refunding taxes paid for licenses, evidenced by special-tax stamps purchased, requiring such refunding to be made as allowances had been and still were made for other unused or spoiled stamps,, deducting 5 per cent, from the face-value of so much of the stamp as appeared, at the end of the year, to have been used in excess of the requirements of law.
And when Congress adopted the Revised Statutes, under which this case arose, the then existing provisions of law were, without change, incorporated therein as follows:
“ Sec. 3238. All special taxes imposed by law, including the tax on stills or worms, shall be paid by stamps denoting the tax, and the Commissioner of Internal Revenue is required to procure appropriate stamps for the payment of such taxes.” * * #
“Sec. 3244. Special taxes are imposed as follows: First. Brewers shall pay one hundred dollars, * * Provided, That any person who manufactures less than five hundred barrels a year shall pay the sum of fifty dollars.”
“Sec. 3232. No person shall be engaged in or carry on any trade or business hereinafter mentioned until he has paid a special tax therefor in the manner hereinafter provided.”
“Sec. 3220. The Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal to him made, to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected.” * # # #
“ Sec. 3426. The Commissioner of Internal Revenue may, from time to time, make regulations, upon proper evidence of the facts, for the allowance of such of the stamps issued under the provisions of this chapter or any internal-revenue act, as may have been spoiled, destroyed, or rendered useless or unfit for the purposes intended, or for which the owner may have no use, or which, through mistake, may have been improperly or *666 unnecessarily used, or where the rates of duties represented thereby have been paid in error or remitted; and such allowance shall be made either by giving other stamps in lieu of the stamps so allowed for, or by repaying the amount or value, after deducting therefrom, in case of repayment, the sum of five per centum, to the owner thereof $ but no allowance shall be made in any case until the stamps so spoiled or rendered useless shall have been returned to the Commissioner of Internal Revenue, or until satisfactory proof has been made showing the reason why said stamps cannot be so returned.”
And the regulations of June 12, 1873, approved by the Secretary of the Treasury, continued to be in force, and among them was the following:
u Claims for allowance on account of special-tax stamps will not be considered in cases where any business has been done thereunder, except in the case of a brewer who has paid a special tax of one hundred dollars, but who, at the close of the special-tax year, is found to have produced less than five hundred barrels. In such case the excess paid by him, less five per cent., will be allowed.”
In the case now under consideration the claimant was a brewer, and as such paid his tax of $100 in advance, for one year commencing on the 1st day of May, 1873, and ending on the 30th day of April, 1874, and received a $100 special-tax stamp therefor.
At the end of the year, in May, 1874, he filed a claim with the Commissioner of Internal Revenue, in writing and under oath, setting forth that he had been assessed, and had paid a tax of $100, as a brewer of 500 barrels or more; that he had not manufactured more than 350 barrels; and that, by reason of such erroneous assessment and payment, he was justly entitled to have $50 refunded to him, and asking for such refund. This was accompanied by the certificate of the deputy collector that he had carefully investigated the facts, and believed the statements to be in all respects just and true. Certificates by the collector were also filed with the Commissioner, that the claimant had'paid the tax as alleged, and that the quantity of beer brewed by him during the year was 340 barrels.
The Commissioner, acting upon this or other evidence satisfactory to himself, found that the claimant was entitled to a refund. In making the allowance he treated the case as the *667 return of a special-tax stamp, under section 3426 of the Revised Statutes, and the regulations approved by the Secretary of the Treasury, June 12,1873, and deducting 5 per cent, from the face-value of so much as had been used unnecessarily or in excess of the requirement of law, allowed $47.50, certified that amount to the Comptroller of the Treasury for refund, and notified the claimant thereof in writing. The certificate was as follows:
“No. 2735.] “ Treasury Department,
“Oppice op Internal Revenue,
“ Washington, July 3,1874.
“I certify that Sebastian Kaufman, of Memphis, Tenn., 70 Bradford st., has returned to this office internal-revenue special-tax stamps of the face-value of fifty dollars, and that the said Sebastian Kaufman is entitled to have refunded to him the sum of forty-seven dollars and fifty cents, being the value of said stamps afier deducting therefrom five per centum, as provided in section 161 of the “Act to provide internal revenue,” &e., approved June 30, 1864, as amended by section 41 of the act of June 6, 1872.
“ J. W. DOUGLASS,
“ Commissioner.
“ To the Comptroller op the Treasury.”
The Comptroller did not pass the claim, and the allowance made by the Commissioner has never been paid.
The argument for the defendants is that the rule under which the Commissioner acted, and his action thereunder, were erroneous and void, because, first, when the provisions of law allowing refunds on stamps returned were first made, special-tax stamps for brewers were not in existence, and when a subsequent law required brewers’ taxes to be paid by such stamps, not contemplated by the refunding provisions, those provisions did not attach thereto. 2d. Because the language of the refunding section, 3426, does not coyer such a case as this. The first is sufficiently answered by the fact that, in 1872, Congress, expressly extended the provisions as to allowances to stamps issued under any internal-revenue act, and at the same session passed another law requiring special taxes to be paid by stamps. And as to the second, the stamp in this case to the extent of *668 $50 was unnecessarily used, or the rate represented thereby was paid iu error, ou the mistaken belief that the claimaut would manufacture five hundred or more barrels of beer, or has been remitted, as is proved by the Commissioner’s certificate -7 which, under either circumstance, would bring the case within the very language of that section.
But if the argument of the Assistant Attorney-General be well founded as to the Commissioner’s powers under section 3426, it only proves that the Commissioner erred in not allowing a refund of $50 under section 3220, instead of making a' deduction of 5 per cent., and allowing only $47.50 under the other section,,in accordance with the practice which existed, as before stated, until the regulations of June 12, 1873, were made. Section 3220 authorizes the Commissioner “to remit, refund, and pay back * * * all taxes that appear to be unjustly assessed or excessive in amount.” In this case $50 of the claimant’s tax paid by him, if not unjustly assessed, was certainly excessive in amount, as the result of his business proved.
The regulation under which the Commissioner acted was sufficient and valid under either section, and unobjectionable, except that, under section 3420, it was too favorable to the defendants by requiring a reduction not therein authorized; but as to that there is no controversy here; the petitioner does not complain and seek to recover $50 instead of $47.50, and the defendants cannot object to paying what their officer has allowed, upon the ground that the regulations did not permit him to refund, and he has not awarded as much as the claimant was entitled to. The regulations were made by the Commissioner, and so were in compliance with the requirements of section 3426, and, being approved by the Secretary of the Treasury, constituted also valid regulations prescribed by him, as required by section 3220.
The application of the claimant for refund was general, and made no reference to any particular law, and was quite sufficient under either of the refunding sections.
It is wholly immaterial in this case, since the claimant does not object, whether or not the Commissioner acted under a wrong statute, or referred to a wrong act for hi's authority, so long as he did not exceed the powers conferred upon him by law, and the result of his action was within his authority, and not to the injury of the defendants.
*669 It was not necessary for him to refer in his certificate of allowance to any statute, and any such reference was an unimportant matter of form or mere surplusage. In fact he made no reference therein to any existing statute, but referred to the one hundred and sixty-first section of the act of 1864, which had been repealed and its provisions incorporated into the Revised Statutes. It would be absurd to hold on any such ground that the certificate was void.
It has ever been the general and liberal policy of the Government, under such regulations as Congress has either itself seen fit to make or has required its officers to prescribe, to remit and refund taxes and duties erroneously assessed or paid in excess of legal obligations in order that the burdens of taxation may not fall unjustly upon any of its citizens; and we have no doubt that, in a case like this, Congress intended that where a brewer paid at the beginning of the year a, greater tax than the result of his business showed he was liable for, the excess should be remitted and refunded to him. The Commissioner acted strictly in accordance with the regulations prescribed by the Secretary of the Treasury, and we cannot say that those regulations were not in compliance with the provisions of law.
This brings us to the consideration of another important question: Has this court jurisdiction in such case to enforce the payment of an allowance of the Commissioner of Internal .Revenue, duly and legally made within the scope of his authority 1
In Nicoll v. The United States, (7 Wall., 70,) the Supreme Court decided that the Court of Claims had no jurisdiction of an action brought to recover back duties on imported goods, illegally assessed, on the ground that the revenue laws, including the internal-revenue laws, ‘f constitute a system which Congress has provided for the benefit of those persons who com- . plain of illegal assessments of taxes and illegal exactions of duties\n wherein special provisions are made on the subject and special jurisdiction is given to other tribunals.
In three cases this court has declined to take jurisdiction of certain cases under those laws.
In Portland Company v. The United States, (5 C. Cls. R., p. 441,) the claimant sought to recover drawbacks, under the internal-revenue laws, on locomotives exported to Canada. Judge Peck says, in the opinion of this court, that “ the manner of *670 the allowance and the mode of payment, and all matters in relation to drawbacks, are subjected to the discretion and judgment of the Secretary of the Treasury, with whom the law seems definitely to have left the power in relation to the whole subject;” and the court held for that reason that it had no jurisdiction. Judge Noth, concurring, says: “It is not the case of a suitor seeking to recover back money illegally collected by the revenue officers and paid into the Treasury without the authority of law. It is the case of a party seeking affirmative relief, given not by the general principles of law, but by an express statutory provision, which at the same time prescribes a special mode of obtaining redress, and designates a particular tribunal as having what the courts have again and again held to be exclusive jurisdiction.”
In Michael Dougherty v. The United States, (6 C. Cls. R., p. 90,) the claimant had imported goods upon which the duties had not been paid, and at the end of the year, as provided by law, the goods were sold; and he brought his action to recovera balance remaining after satisfying duties and charges. The amount of this balance was in controversy, the petitioner claiming that the duties should have been assessed at a rate lower than had been fixed and determined by the officer having j uris-diction of that question. This court held that it had no authority to decide upon the rate of duty to be assessed on imported goods, and dismissed the petition.
In Jonathan Turner v. The United States, (9 C. Cls. R., p. 367,) the claimant sued for an allowance on account of leakage of distilled spirits, given by statute and the Treasury regulations, but refused by the Commissioner of Internal Revenue. The-court held that the case was within the scope of the decision of the Supreme Court in Nieoll’s Case, and refused to take jurisdiction.
In all these cases the questions in controversy were, by law, required to be determined by other officers and other tribunals than this court, and they had acted adversely to the claimants.
But that is not this case. Here the Commissioner of Internal Revenue has determined the questions which were within his jurisdiction, has awarded an allowance, has filed his certificate thereof with the Comptroller of the Treasury, and has exhausted his jurisdiction.
Nothing more remains to be done, except the passing of the *671 claim by the accounting-officers of the Department, and the issuing of a warrant for payment. The Commissioner has acted within the scope of his authority, and the claimant stands credited in the records of the Internal Revenue Bureau with an allowance which has never been revoked. He does not bring this action for the determination of any question which is within the jurisdiction of the Commissioner, and does not seek to have the decision of that officer overruled, but prays the judgment of this court to enforce it.
The Court of Claims has heretofore exercised jurisdiction in the following cases which arose under the revenue laws, and were held not to be ruled by the decision in THcolVs Case:
1. Under the internal-revenue laws, the Commissioner, with the approval of the Secretary of the Treasury, fixed the salary of a collector at $4,000 a year. Subsequently, after the salary had accrued, the Secretary reduced the amount to $3,000, and the difference of $1,000 was deducted and retained by the Department out of a special allowance made to the collector, and the collector sued in this court for the amount withheld. Judgment was- awarded the petitioner for the sum claimed. (Patten v. The United States, 7 C. Cls. R., p. 362.)
2. A manufacturer and purchaser of proprietary stamps, who had furnished his own dies, was entitled by express provisions of statute to a commission of 10 per cent, on his purchases, while the Commissioner allowed him only 5 per cent.; he sued for the difference. It was held that an express contract was made by the statute provisions on the part of the United States, and therefore the case was within the defined jurisdiction of this court. (Daily v. The United States, 7 C. Cls. R., p. 383.)
3. An action was brought by a claimant to recover his share, as an informer, of a forfeiture for frauds perpetrated on the revenue by a mercantile house in New Orleans. The defendants filed a plea to the jurisdiction, which was overruled. (Shelton v. The United States, 8 C. Cls. R., p. 487.)
And in this case, on the ground that there was a contract implied on the part of the defendants to pay any allowance which the Commissioner should legally and properly award under the statutes and regulations, we are unanimously of opinion that this court has jurisdiction, and that the claimant has a good cau'-e of action.
*672 We have given the subjects here discussed much consideration, because, although the amount in controversy is small, this is a class case, affecting the practice of the Department, in which many other persons, not now before the court, may have an interest.
The judgment of the court is that the claimant recover the sum of $47.50.