Richardson, J.,
delivered the opinion of the court:
This action is brought to recover the unpaid balance, amounting to $972.69, of a certificate of allowance made by the Commissioner of Internal Revenue for the refund and payment back <of taxes illegally assessed and collected.
No allegation or suggestion is made in behalf of the defendants that there is any mistake apparent upon the certificate, or that any fraud, or deception, or concealments were practiced in the course of the proceedings, or that there is any want of good faith on the part of anybody. They admit that the claimants erroneously paid the amount in taxes illegally assessed upon them, and that the Commissioner, acted throughout in strict accord with the rules and regulations prescribed by the Secretary of the Treasury and the uniform practice of the Treasury Department for some years.
*343 The only obstruction to the payment of the allowance is the objection now urged for our consideration, that the facts show, as it is alleged, that the appeal for refund upon which the allowance was founded ivas not presented to the Commissioner of Internal Revenue within two years next after the cause of action accrued, as required by the statute.
The Commissioner himself held that it was presented to him within the two years; and the Secretary of the Treasury, to whom the appeal was submitted by the Commissioner before the final decision, under the regulation requiring all such claims above $250 in amount to be submitted to him for consideration and advisement, approved .the payment.
The Commissioner of Internal Revenue and the Secretary of the Treasury are not accounting officers, and the adjudication made by either one of them upon a matter submitted by law to his sole discretion, judgment, and determination bears a different relation to the rights and liabilities of the parties from the results reached by mere accounting officers in the process of settling accounts in the Treasury Department. (United States v. Jones, 18 How., 92; McKnight's Case, 13 C. Cls. R., 308.)
The Commissioner derives his authority from the following section of the Revised Statutes:
“ Sec. 3220. The Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal to him made, to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unj ustly assessed or excessive in amount, or in any manner wrongfully collected. . * * *
“Sec. 3228. All claims for the refunding of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to haAm been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, must be presented to the Commissioner of Internal Revenue Avithin two years next after the cause of action accrued.”
Three actions, upon certificates similar -to the one now in suit, have heretofore been maintained in this court, and the law in relation to'the force and effect of such certificates has been carefully considered here and in the Supreme Court.
In Kaufman's Case (11 C. Cls. R., 659), which was the first of the cases referred to, we held that the Commissioner alone had *344 jurisdiction and authority to allow a refund of taxes illegally assessed and erroneously paid; that it was for him to determine all the questions of law and fact which were involved in the appeal made to him, and that his certificate of allowance created a new cause of action upon an implied promise by the United States to pay the amount found, determined, and certified to be due and payable. Judgment was rendered for the claimant.
* On appeal, the Supreme Court affirmed the decree and fully sustained the views which we had expressed. The Chief Justice, in the opinion delivered by him, speaking for the whole court, said:
“ It is now insisted that the finding of an allowance by the Commissioner is not enough, and that the court should have gone behind the allowance and found the facts in respect to the original claim.
i “ Such, we think, is not the law.
“To say the least, the allowance of a claim under this statute is equivalent to an account stated between private parties, which is good until impeached for fraud or mistake.
“ It is not the allowance of an ordinary claim against the government by an ordinary accounting officer, but the adjudication by the first tribunal to which the matter must by law be submitted.
“Until so submitted, and until so adjudicated, there is not even a prima facie liability of the government; but when submitted, and when allowed upon the adjudication, the liability is complete until in some appropriate form it is impeached.
“ When, therefore, the court found the adjudication against the government, without impeachment, the liability to pay was established.
“We do not decide that in the Court of Claims the adjudication of the Commissioner may not be impeached, but we do decide that until impeached it is binding, and that the affirmative of the impeachment is upon the government.” (96 U. S., 570.)
In Woolner’s Case (13 C. Cls. R., 355) the claimant brought his action to recover upon an allowance made by the Commissioner for the refund of a, tax on distilled spirits which had been paid a second time, by means of the purchase of tax-paid stamps; the stamps first purchased having been accidentally destroyed before they were used. The accounting officers arrested the payment of the certificate on the ground that the Commissioner did not m ake the allowance in the right way. We held that the defendants were concluded by the certificate, and *345 gave judgment for tbe claimant. In this judgment tbe defendants acquiesced, no appeal having been taken by tlie Attorney-General.
The Bank of Greencastle Case (15 C. Cls. R., 225), the third and latest case, involved a question of law very nearly, if not precisely, tbe same as that now raised in this action. Tbe defense set up was that tbe claim or appeal bad not been presented to tbe Commissioner within tbe two years required by law. On that point there was conflicting evidence both in this court and before the Commissioner, and it did not appear that all tbe evidence upon which tbe Commissioner acted was produced here.
Following tbe decision of tbe Supreme Court in Kaufman’s case, as we are bound to do, we held that Congress has conferred upon tbe Commissioner of Internal Revenue tbe power and duty of passing upon tbe merits and determining tbe validity of all claims for tbe refund of taxes under section 3220 of tbe Revised Statutes, and that in an action in this court under a certificate of allowance made by tbe Commissioner it is not necessary for tbe claimant to re-establish tbe material facts determined by tbe Commissioner, and upon which be founded his decision granting tbe allowance. We held further that tbe time of tbe presentation of tbe claim, under the circumstances, was one of tbe facts to be determined by tbe Commissioner upon such evidence as was presented to him, and that bis decision thereon, in tbe absence of fraud or irregularity, was conclusive, and could not be set aside by this court.
That decision was also acquiesced in by tbe Attorney-General.
Row, upon further reflection, and a reconsideration of tbe whole subject after reargument by counsel, we are satisfied that tbe principles laid down in those cases are correct in law, and just to tbe government as well as to individauls who are compelled to submit to tbe payment of taxes assessed upon them.
If, however, we have jurisdiction to review tbe action of tbe Commissioner and tbe Secretary of tbe Treasury after tbe certificate of allowance has been made, we have no hesitation in bold-ing that tbe conclusion which they reached on tbe point now in controversy was correct and warranted by tbe facts and tbe law.
Tbe statute does provide that all claims for refunding shall be presented to the Commissioner within two years next after *346 tbe cause of action accrued. But, evidently, that does not mean that the claim shall be served personally on the Commissioner,, like the personal service of a writ or other process in an action at law. Such a presentation would be wholly impracticable, with the Commissioner residing in Washington and the claims existing in every collection district all over the country. It would be entirely contrary, also, to the uniform and well-understood course of departmental business in all branches of the government. In point of fact, claims, and other like communications, addressed to the Commissioner and transmitted by mail or presented by messenger at the department in Washington, are not at once delivered personally to him. They are received by clerks, and pass through several subordinate officers before they are placed in the hands of the Commissioner, whom they do not reach frequently for weeks, and perhaps months or even years afterwards, when they are prepared by his subordinates for his final action.
Statutes must have a reasonable construction, and the lan guage must be interpreted with reference to the subject-matter and the general course of business to which they relate, and in such manner that the beneficent provisions of remedial laws may not be thwarted by nice technicalities not within the minds of the legislators. (Wilcox’s Case, 95 U. S. R., 661, affirming the judgment of this court in same case, 12 C. Cls. R., 595.)
The evident object aimed at by this law was to have the proceedings for the refund of taxes actually instituted within the time limited, in order to avoid the consideration of stale claims, and not to define the manner in which they should be presented to the Commissioner. It was manifestly not within the intention of Congress to prohibit the Commissioner, or the Secretary of the Treasury, by the rules which he was authorized to make, from designating some subordinate officers to receive for the Commissioner the appeals for refund which might be made to him.
If they can designate clerks in the office at Washington for that purpose they may with equal propriety designate the collectors of the several districts, who are in like manner the subordinate officers of the Secretary of the Treasury and of the Commissioner of Internal Bevenue, and as much bound to obey the instructions of their superiors as are the clerks in the bureau or department.
*347 The Secretary of the Treasury, by virtue of the statute authorizing him. to prescribe regulations, made a rule providing that claims for refunds should be presented through the collectors of the respective districts on forms printed at the department and furnished to the collectors.
The blank form requires the certificates of the deputy collector and the collector that they have severally investigated the facts, and are satisfied the statements are true. The collectors are required to keep a record of all claims presented to the Commissioner through them, and to transmit the claims to the Office of Internal Revenue.
Claimants are instructed to apply to the collector of their district for blanks upon which to prepare their appeals, and are informed that he will assist in the preparation of them; and when an appeal happens to be sent by mail directly to the Commissioner in Washington it is transmitted to the collector for his investigation and certificate.
The rule is one of convenience to the department as well as to claimants. It facilitates the transaction of the business of the bureau, and gives to claimants in distant parts of the country equal facilities with those residing in Washington. It is a reasonable and proper one to be adopted by the Secretary of the Treasury “ for the government of his department, the conduct of its officers, and the custody of the papers appertaining thereto” and is within the scope of his authority as conferred by sections 161 and 3220 of the Revised Statutes.
The validity of a rule involving exactly the same principle has already been affirmed by the Supreme Court in Adams v. the United States (6 Wall., 101). The Court of Claims has a rule requiring appeals in vacation to be filed with the clerk, instead of with 'the Chief Justice, who alone has power, at such time, to allow them, and providing that such filing shall be deemed the date of application from which the limitation of time for taking appeals shall cease to run.
It was contended that the application should have been presented to the Chief Justice in person within the ninety days, limitation, just as it is contended in this case for the defendants, that the appeal for refund should have been delivered to the Commissioner in person within the two years limitation. But the Supreme Court decided otherwise, and Mr. Justice Miller, in giving the unanimous opinion of the court, said: “We think. *348 that whether done in vacation or in session, or during a temporary recess, the rule adopted by that court, of requiring the •application to be made by filing it with the clerk, is a very proper one.”
When, therefore, under the instructions of the Commissioner •of Internal Revenue, and in accordance with the regulations made by the Secretary of the Treasury, a collector receives for the Commissioner a duly prepared appeal for a refund of taxes within two years next after the claim accrues, it must be held to be a presentation to the Commissioner within the meaning of the statute, if so received, accepted, and acted upon by him.
The Commissioner takes it into his own custody through his subordinate officer, who is made his duly-appointed agent for that purpose, and the claimant loses the control of it and is relieved from further responsibility to see that it reaches the hand and the eye of the Commissioner.
We said in Kaufman's Case (11 C. Cls. R., 669) that—
“ It has ever been the general and liberal policy of the government, under such regulations as Congress has either itself seen •fit to make or has required its officers to provide, to remit and refund taxes and duties erroneously assessed or paid in excess of legal obligations in order that the burdens of taxation may not fall unjustly upon any of its citizens.’?
The Treasury Department has followed the same liberal policy in construing and administering the law through the Internal Revenue Bureau. It is a principle universally recognized •and enforced in the courts of law that an action cannot be maintained for the recovery back of money paid in discharge of a tax illegally assessed, unless the payment was made under protest. But that principle has as uniformly been held by the Commissioner of Internal Revenue and other officers of the department as altogether too technical and too exacting for application to the refund of taxes through the Commissioner, and from the beginning no proof of protest has ever been required.
In our opinion, it would be a serious and most unjust departure from the liberal policy of the law and of the administration of it to hold now, after long practice to .the contrary, that the 'Commissioner and the Secretary of the Treasury cannot authorize collectors of internal revenue to receive appeals for and in behalf of the Commissioner with the same effect as if presented .personally to him.
*349 It must not be overlooked that the question here raised is. not whether a claimant for the refund of taxes has the right, independently of the directions of the Commissioner and of the regulations of the Secretary of the Treasury, to deposit his appeal with a collector of taxes, with like effect as if presented to the Commissioner, and thus, of his own motion, cast the responsibility of its custody and ultimate reception by the Commissioner upon that officer against his will. That question was submitted to the Attorney-General and lias arisen in the courts, and it has been held, as it could not otherwise be held, that he has no such right, and that in such case he would make the collector his own agent for the transmission of the claim and not the Commissioner’s agent to receive it. But the Treasury regulations were not then under consideration and were not referred to.
The question here raised, and which is now raised for the first time in a court of law, is whether the Secretary of the Treasury, under the statutes authorizing him to prescribe regulations to which the Commissioner shall be subject in respect to the refunding of the taxes, and other regulations for the conduct of his subordinate officers and the performance of their business, may not designate the collectors of taxes to receive for the Commissioner claims for refunds properly addressed to him and made out on blanks furnished from the department, through such collectors, and thus make the collectors the agents and receiving officers for the Commissioner in such cases — at least so far as to render valid the future action of the Commissioner and Secretary of the Treasury, based upon their decision that a delivery to a collector under regulations so prescribed is a presentation to the Commissioner.
To our minds it is as clear that the Secretary of the Treasury has such power as it is that a claimant, without such regulations, cannot make the collectors or any other officers the agent's of the Commissioner.
The regulations and practice are matters of departmental business arrangements and convenience, and may well be left, to the discretion of the Commissioner and the direction of the head of the department without detriment to the public service. They have been extensively promulgated and long followed. Tax-payers have become familiar with them, and have been *350 guided by tbein iu seeking tlieir remedy in case of erroneous payment of taxes.
Tlie Secretary of the Treasury may abrogate them whenever he thinks the public interest demauds it.
Law and justice require that they should be upheld so long as the head of the Treasury Department allows them to be in force.
The present claimant delivered his appeal iu proper form, upon an official blank, to the right collector, according to the regulations, on the 9th of July, 1880. Had the collector transmitted it to Washington by post at once, it would have reached there by due course of mail within the time of the two years limitation. But he retained it until the 15th of July, several days after the time of limitation expired, before he made upon it the certificate which the regulations required of him, and then forwarded it to the Commissioner at Washington.
For nearly a year previously the Commissioner had official knowledge of the illegality of the tax in question, had considered the subject, and on the 29th of November, 1879, had decided that for the future the bank should not be subjected to similar taxes, and might make its returns accordingly.
It was under these circumstances that the Commissioner made the certificate of allowance now in suit, and the Secretary of the Treasury approved the payment of the claim on which it was founded.
To overrule their decision, if we have that right, would work great injustice to parties who have a claim which is admitted to be honestly and justly their due, who have acted in good faith, and have followed and relied upon the regulations promulgated by the Secretary of the Treasury for the guidance of persons having such business with the department.
For the reasons already given we are of opinion that we aro not required either in law or justice to overrule their decision, and that the certificate of allowance stands unimpeached.
At the trial it was argued that the decision of the Comptroller refusing to pass the allowance and to countersign a warrant for its payment had some bearing upon the claimant’s right to recover in this court. But such is not the case.
The Comptroller is merely an- accounting officer, the agent of one only of the parties to claims against the government, the officer clothed with authority to determine whether the *351 Treasurer shall be authorized to pay a demaud in the form and under the circumstances in which it is presented to him, and not an arbitrator to finally settle and determine the legal rights of both parties.
His decisions are not conclusive against the demands of claimants. It was so held by the Supreme Court nearly fifty years ago in the case of The United States v. Jones (8 Pet., 375). Since then the cases are numerous wherein the Supreme Court has rendered judgment in favor of claims which the Comptroller had rejected.
And even as against the United States, in respect to adjustments made by the accounting officers before consummation by actual payment, the Supreme Court, speaking through Mr. Justice Swayne, as recently as 1876, emphatically said:
“The idea that the government is finally concluded by the results at which they [the accounting officers] arrive wouid be regarded as a novelty within and without the several departments” (Chorpenning Case, 94 U. S. R., 397).
The decisions of a Comptroller, who, in connection with other officers, is the representative of the United States in the matter of settling accounts, may be conclusive against the government after, but not before, they are consummated by the drawing of a warrant founded thereon, signed by the Secretary of the Treasury, and by the issue of a draft on the public treasury for the payment of the amount allowed, in like manner as an individual is concluded, when, with a full knowledge of all the facts before him, he has paid a demand made against him.
On the other hand, a claimant against the United States is no more concluded by the refusal of the Comptroller to pass his account than a claimant against a corporation is concluded by the refusal of its officers to pay his demand. In each case the proper courts are open to the contending parties. (McKee's Case, 12 C. Cls. R., 558. McKnight's Case, 13 id., 292, affirmed, 98 U. S. R., 179. Buffalo Bayou & Colorado R. R. Company’s Case, ante, p. 238.)
Even when an account is adjusted, settled, and paid at the Treasury Department, in accordance with the decision of the Comptroller, and the claimant is dissatisfied with the amount paid to him, and of his own motion reopens the settlement in a court of law, the previous decision of the Comptroller is not conclusive against either party, not even against the United *352 States as it is when tlie claimant leaves the settlement undisturbed. (McElrath’s Case, 102 U. S. R., affirming the judgment of this court in same case, 12 C. Cls. R., 201; McKee's Case, ibid., 560.)
There is no doubt of the power of the Comptroller to refuse to authorize the payment of any claim presented to him, even the salary of the President or of a judge of the Supreme Court, but that refusal does not finally settle the legal rights of the claimant. It is his duty to refuse to pass a claim which he considers unjust and impeachable in law, and thus to leave the claimant to his remedy in the proper court.
His decisions, so far as they relate merely to the balances which are found and stated by him, are in that respect conclusive upon the executive branch ofthe govprnment, but not upon ' Congress or the Courts. Such is the principle upon which the Treasury Department is organized, and it is so expressly provided by statute, now Revised St itutes, section 191, as follows:
“Sec. 191. The balances which may from time to time be stated by the Auditor and certified to the heads of departments by the Commissioner of Customs or the Comptroller of the Treasury, upon the settlement of public accounts, shall not be subject to be changed or modified by the heads of departments, but shall be conclusive upon the executive branch of the government, and be subject to revision only by Congress or the proper courts. The head of the proper department, before signing a warrant for any balance certified to him by a Comptroller, may, however, submit to such Comptroller any facts in his judgment affecting the correctness of such balance, but the decision of the Comptroller thereon shall be final and conclusive, as here-inbefore provided.”
In other respects the comptrollers are as much subject to the-rules, regulations, and general directions of the Secretary of the Treasury, and, as much bound to obey, and to be governed by them, as are all other subordinate officers in the Treasury Department.
The jurisdiction and functions, and the force of the decisions of a comptroller, are widely different from those of a court. Those of the one are executive and departmental, and those of the other are judicial. The decisions of a comptroller) so far only as they affect the balances found and stated by him, are conclusive on the executive branch of the government; and the judgments of a court are conclusive in all matters legally put. in issue and upon all parties to the proceedings.
*353 It is a novel defense to set up in a court of justice that the. officers of a defendant corporation or quasi corporation have decided not to pay the demand sued upon.
In these views we all concur. Judgment will be entered in favor of the claimant for the sum of $972.69.