Scoeield, J.,
delivered tlie opinion of the court:
This suit is brought to recover i the amount of a judgment rendered in the United States circuit court, northern district of Georgia, the payment of which, under the advice of the Secretary of the Treasury, was authorized by the Commissioner of Internal lie venue, but disallowed by the First Comptroller.
The following is a brief summary of the findings of facts :
An action in trespass vi et armis against James Atkins, C. B. Blocker, and William Jennings, first cpmmenced by the claimant September 7, 1874, in the State court .of Georgia, was removed November, 1875, to theUnited States circuit court. The trespass was alleged to have been committed February 14,1871. At that time Atkins was collector of internal revenue and Blocker a deputy'collector. Atkins ceased to be collector February 27,1872, and Blocker to be deputy March 31,1871. September 28,1877, the case was dismissed as to Jennings.
The suit against Atkins and Blocker went to trial before a jury September 29,1877.' On the same day verdict was rendered in favor of Atkins but against Blocker for $750 and costs. Thereupon judgment was entered by the court in favor of claimant and against Blocker for $750 and costs, and in favor of Atkins and against claimant for costs.
A motion by Blocker for a new trial, made October 18,1877, was overruled June 19, 1880.
A certificate of the judge that “ there was probable cause for the acts done by Blocker ” was filed June 23, 1880.
No department, bureau, officer, or agent of the government had any notice or knowledge of these judicial proceedings. The demand of payment was the first notice of the suit.
A copy of the record, forwarded by the plaintiff's attorney, who claimed to be half owner of the judgment, on a conditional fee, through the collector, to tlie Commissioner of Internal Revenue, was by him, in accordance with regulations, laid before the Secretary for advice. January 29, 1881, the Secretary “approved the allowance and payment of judgment and costs, $833.70.” February 5, 1881, the Commissioner, calling it “a claim for a refund of taxes erroneously assessed,” certified that he “ had examined and allowed the claim.”
March 26, 1881, the claim was rejected by the First Comptroller.
There are two sections of the Revised Statutes, to wit, 3220 *254 and 989, in which provision is made for the settlement of judgments against revenue officers. The first relates only to officers of internal revenue; the second to officers of customs revenue, and perhaps of internal revenue also. However that may be, the proceedings under the two sections are quite different. By section 989, the judge is authorized to certify “ probable cause,” and thus stay execution against the defendant. The judgment, by virtue of these proceedings, having been assumed by the government, is laid before the accounting officers for examination and payment. . But under section 3220 no authority is given to the court to certify probable cause or stay execution. The judgment goes, first, to the Commissioner, under advice of the Secretary, for readjudication and allowance; then, if allowed, to the accounting officers for examination and payment.
Between these two sections this case has become somewhat confused. The judge and the lawyers on both sides in the circuit court seem to have considered it under section 989, for the court granted the certificate on motion of the defendant’s attorney, and under this section the demand upon the Treasury for payment was specifically made by the attorney for the plaintiff. '
On the other hand, in the Treasury Department the allowance by the Commissioner, with the advice of the Secretary, was made under section 3220.
In this court the counsel for the claimant holds that he is entitled to recover under either section — under 989 upon the judgment of the circuit court, or under 3220 upon the allowance of the Commissioner. We will consider the question under both sections.
First, as to section 989 :
A judgment and certificate, under this' section, properly obtained, undoubtedly creates under the law an obligation against the government in the nature of a contract. Such a judgment is as binding upon the accounting officers and the United States as a judgment of this court. If, for irregularity or other cause, payment is refused, this court has jurisdiction to entertain a suit. (8 O. Ols. B., 451; appealed and affirmed; 20 Wall., 641; 10 C. Cls. B., 134; 98 U. S. B., 565.) Accepting jurisdiction under these authorities, we come next to inquire if this is a judgment which the United States, under section 989, is obligated to pay.
*255 It appears by the findings of fact that the government had no notice, direct or indirect, of the proceedings in court. Neither of the defendants in the suit at its beginning, nor at any time during its pendency, held any official relation with the United States. Atkins went out of office two and a half years, and Blocker three and a half years, before suit was brought. It does not appear that Jennings was ever in office. So there was even no constructive notice. The United States district attorney resided in the same city where the records were kept and the courts held. He was required by law to defend all such suits without charge to the defendants. He was also required to make report of all suits both to the Department of Justice and the Commissioner of Internal Revenue. The collector, who had his office in the same city, was also required to report to the department all such suits; but neither of these officers received notice by either of the defendants of proceedings against them, nor did they derive knowledge of them in in any other way. Both Atkins and Blocker, having been in the service, doubtless knew the law, but, for some unknown reason, they preferred to employ private counsel at their own expense. Not only were these officers ignorant of what was going on in the premises, but no department, bureau, officer,or agent of the government received any notice. If the district attorney had read the record and declaration in this case, he would only have learned that the defendants were charged with committing a “ malicious trespass without any reasonable or probable cause.”
The question is fairly presented whether the government ought to be compelled through the decision of this court to pay a judgment rendered in a suit between private citizens, but in which the judge has certified “ probable cause,” without notice or opportunity to defend. Notice, it is true, is not required in express words by the statute, but it is by the principles of common law and by the practice of all courts of justice. The statutes cannot always go into details of practice. Most frequently they declare only the rights of parties and leave them to be enforced in the courts according to established rules. The certificate of probable cause operates as a perpetual stay of execution. By thus relieving the defendants from liability, in effect and practically, a judgment is rendered against the United ' States. (Sherman’s Case, 98 U. S. R., 565.) It should not be *256 . forgotten that State courts as well as United States courts all over the Union have jurisdiction of such cases. The waiver of notice would be an invitation to collusion and fraud. In this very case some things appear suggestive of relations not common to litigants. The plaintiff kindly forbore his suit for more than three years and a half,-and then gave it to an attorney on shares. Blocker immediately waived process and entered an amicable appearance. While, as ex-collector and ex-deputy, both the defendants, particularly the former, must have known that by giving a hint to the local officials the government would immediately furnish them the best of counsel without charge, they chose, with unexampled delicacy, having been off the payroll for several years, to employ private counsel at their own expense rather than worry these officials with their troubles or accept assistance without compensation. The case is taken to the United States court, in part by the agreement of parties. The jury found Atkins was not liable, although the law (Bev. Stat., § 3148) distinctly declares that the collector shall beheld responsible for every act done by the deputy in the performance of his official duty. This finding, unexplained, proves that the trespass was not committed by Blocker while acting as deputy, but, as the declaration alleges, “maliciously and without any reasonable and probable cause.” A motion for a new trial is made, without filing reasons, and overruled several years after, without objection. .Some days thereafter the defendant takes opportunity to move for a certificate of probable cause. The plaintiff assents with suspicious readiness. There being no one present, to question its propriety, the certificate, possibly, may have been inadvertently given. We recount these circumstances not to prejudice this suit, but to prove the propriety of a rule, whereby all suspicion of collusion will be avoided.
Believing that opportunity tobe heard should be a condition precedent to liability, we hold in this case that the government, having had no notice, actual or constructive, ol the proceedings in the court, is not concluded by its judgment. ’
Two other objections are raised to the validity of the judgment and certificate; It is said the words “collector, or other officers of the revenue,” do not relate to officers of internal revenue, but to officers of customs revenue only. Therefore the certificate of probable cause was not authorized under that section. Campbell v. James (18 Blatch. 196) is cited to sustain this limitation.
*257 It is claimed also that a deputy collector does not come within the protecting provision of this section, because he is not an “ officer of the revenue.” It requires an appointment by the President, or head of a department, it is said, to make an “officer.” Without the advice or consent of anybody the collector appoints as many deputies as he pleases, but he is held responsible for everything done by them while acting as deputies, while the President and heads of departments are never held responsible for the acts of their “ officers.” Landrum’s Case (16 C. Ols. It., 82) is cited in support of this construction.
Having decided the case under section 989 on the question of notice, the court does not feel bound to pass upon these additional objections.
Hitherto we have been considering the liability of the government under section 989, growing out of the judgment and proceedings of the circuit court. When we come to consider it under section 3220, an entirely different question is presented. Here we encounter the decision of an intervening tribunal. The Commissioner of Internal Revenue, under the advice of the Secretary, has taken jurisdiction of the claim, and decided it in favor of the claimant. We are now to pass, not upon the court decision, except, perhaps, incidentally, but upon the decision of the Secretary and Commissioner. Here we can inquire only whether these officers had jurisdiction of the case, and whether their decision is free'from fraud or mistake. (Kaufman’s Case 11 C. Cls. R., 659; 96 U. S. R., 570, 571; Real Estate Savings Bank’s Case, 16 C. Cls. R., 335; Barnett’s Case, id., 335. The last two cases cited have been affirmed on appeal. See post.)
Section 3220 provides that “ the Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized to repay * * * all damages and costs recovered against * * * any deputy collector in any suit brought against him by reason of anything done in the due performance of his official duty.” The regulations provide that “when the amount exceeds $250, the claim with the evidence in its support shall, before decision, be submitted to the Secretary for his consideration and advisement. It cannot be denied that these officers have ample authority under this clause of the law to consider and allow the payment of this judgment. Their action upon it is fully set out in the findings. They de *258 cidecl that the judgment and costs should be paid. There is no allegation of fraud, but several supposed mistakes are presented for our decision.
The question of notice, discussed in connection with the judicial proceedings under section 989, is again presented. It requires but little consideration in this connection. It is conceded that the decision of the' circuit court under section 989, when regular, is conclusive upon the accounting officers of the government. Unless, therefore, notice of proceedings in court is required, no hearing is given anywhere. Not so under section 3220. The accounting officers have nothing to do with the judgment until it has been readjudicated and allowed by the Commissioner and Secretary. Nor are these latter officers bound by it. It is fully in their discretion to allow or disallow payment. With them the verdict of the jury and the certificate of the judge amount only to persuasive evidence. They can go behind them both and inquire into all the facts, circumstances, and allegations that may assist in coming to a correct conclusion. They may refuse to allow the claim because no hearing was given to the government in court, or they may waive that and consider its merits. With this unlimited power of review it cannot be said that the government has not had a day in court. We can correct mistakes and investigate frauds committed by these officers, but we cannot readjudicate matters specially confided to their discretion.
It is objected, further, that the payment is allowed in favor of the plaintiff in the judgment instead of the defendant. Is this a mistake? .The language of the law is, “authorized * * * to repay * * * all damages and costs recovered against” the officers named. This particular clause of the section does not specify to whom the repayment shall be made. If it had said “ pay all damages and costs,” the meaning could not have been doubtful. The payment would be made to the plaintiff beyond doubt. The word “repay” is often used as synonymous with “restore.” In that sense it would have authorized the loss to be restored to the party who had suffered it: to the defendant if he had paid it, and. to the iffaintiffif the loss still rested'on him. The repayment, it is said, is for the protection of the officer — not the aggrieved citizen. True, but that fact does not favor the proposed construction. A deputy collector is not supposed to be rich, while the damages recov *259 ered may be very large. To require him first to pay the money, raised perhaps by a loau or sacrifice of property, would be j>oor protection. He might not be able to raise it at all, and in that event his property would be sold on execution, and in many of the States he could be imprisoned. In reply, it is said execution would be stayed by the certificate of probable cause. It should be remembered, however, that under section 3220 no certificate is required or authorized. But if it were, it can hardly be supposed Congress intended to originate such proceedings to work out such dishonest results. We are therefore of the opinion that the only practical and honest construction that can be given to this clause of the law is, that the “damages recovered” shall be paid to the defendant, if he has satisfied the judgment; if not, to the plaintiff. This construction is in accordance with the uniform practice of the department since the law was passed.
A third supposed mistake consists in this: In certifying that the “damages recovered” in favor of the claimant “had been examined and allowed,” the Commissioner, both in the heading, in the statement of amount, and in the concluding certificate, calls it a “claim for the refunding of taxes erroneously assessed.” By the whole of section 3220 the Commissioner is authorized to do divers things: “remit taxes assessed,” “refund taxes collected,” “repay damages,” “refund penalties,” &c. In doing all these things it has been found convenient to use only one form of printed blank. This may not be a good style of bookkeeping; but, if the certificate of allowance given by the Coin-missioner is in all cases accompanied on its way through the accounting offices by the evidence and a full statement of facts upon which it is founded, we can see no legal objection to it. To disguise an allowance of “ damages recovered” as a “refund of taxes erroneously collected” would constitute a very grave mistake. But that is not the purpose nor effect of this practice. We do not feel called upon to overturn a long-established mode of procedure in the Treasury Department. Such reforms may be safely left to the Secretary of the department. This construction agrees with the former rulings of this court. In Woollier’s Case (13 O. Cls. B., 365) it was said “the forms of proceedings by the Commissioner are not within the control of claimants, and they should not lose their rights by any errors or imperfections therein made by him, or with his concurrence. *260 It is sufficient if tlie Commissioner acts within the scope of his authority and jurisdiction, whatever forms he may adopt.” In this case, the correspondence between the Secretary and Commissioner which fully described the claim, as well as the record of the judgment, was attached to and accompanied the certificate of allowance. So no one could have been deceived.
The judgment of the court is, that the claimant recover from the defendants the sum of $833.70.
Nott, J., was absent when the decision was announced, but was present at the hearing and concurred in the judgment.