Scoeield, J.,
delivered the opinion of the court:
This action is brought to recover an allowance made by the Commissioner of Internal Bevenue for taxes erroneously assessed and paid. The amount is $351. There is no dispute about facts. It is conceded that the tax was assessed and paid, and the application for a refund was made in the manner and within the time provided by law.
The main question involved is as to the lawfulness of an allowance made by the Commissioner, after the Secretary of the Treasury had advised against it.
The records of the Treasury Department, as appears in the findings, present the following facts :
June 4, 1873, the claim was filed. March 28, 1876, it was examined and allowed nisi, by Commissioner Pratt, and transmitted to the Secretary “ for his consideration and advisement.” September 12,1876, the Acting Secretary replied that “ in view of all the facts in the case the recommendation for a refund of the tax is disapproved.”
November 24, 1876, the case was taken up by Commissioner Baum, examined and allowed nisi, and transmitted to the Secretary with additional evidence “ for his further consideration.” March 26, 1877, the Secretary replied “ your recommendation for a refund is disapproved.”
June 18,1880, upon further consideration by Commissioner Baum, he again recommended its allowance, and again transmitted it to the Secretary, with a full history and statement of the case. June 22,1880, the case was returned by Assistant Secretary Upton, with, the information that11 the application for a reconsideration is refused.”
December 10, 1883, the case was taken up by Commissioner Evans, examined, and allowance recommended and transmitted *464 to the Secretary “for his consideration and advisement.” December 31, 1883, it was returned by the Secretary to the Commissioner with a communication, reciting the several dis-approvals of his predecessors, but concluding as follows:
“ I return the claim without further action. I have to add, however, that in view of the decisions of the courts on the power of the Commissioner under section 3220, Revised Statutes, I have no objection to your sending the claim to the accounting officers for their action.”
Thereupon, January 3,1884, a final examination and allowance of the claim was made by the Commissioner, and the same was then transmitted to the accounting officers for settlement. February 23, 1884, the claim was disallowed by the First Comptroller.
The authority under which the Commissioner decided to refund the tax is given in the first part of section 3220 of the Revised Statutes, and is as follows:
“ The Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal to him made,to remit, refund, and payback all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected.”
The following is the regulation prescribed by the Secretary applicable to this claim:
“ 7th. Where the case of an appeal involves an amount exceeding $260 and before it is finally decided, the Commissioner of Internal Revenue will transmit the case,, with the evidence in support of it, to the Secretary of the Treasury for his consideration and advisement.”
This law very plainly imposes upon the Commissioner, and upon no other officer, the duty of deciding whether a tax has been erroneously or illegally assessed or collected, and whether it should be refunded. The power had to be lodged somewhere, and Congress undoubtedly imposed it upon him because he was considered the best qualified to administer it. The taxes were to be assessed and collected by him and his subordinates. All the records, reports, or other evidence affecting cases were in his possession. He necessarily became very familiar with the manner of proceeding and with the mistakes occurring or evasions attempted. The only restraint put upon his action is *465 that he should proceed in such cases “subject to regulations prescribed by the Secretary of the Treasury.” While his decisions may undoubtedly be impeached for fraud or mistake apparent on the record, no other officer of the government is authorized to review matters that fall within his discretion. (Kaufman’s Case, 11 C. Cls. R., 659. Affirmed on appeal, 96 U. S. R., 568.) In this case the Supreme Court says:
“It is now insisted that the finding of an allowance by the Commissioner is not enough, and that the court should have gone behind the allowance and found the facts in respect to the original claim. Such, we think, is not the law. To say the least, the allowance of a claim under this statute is equivalent to an account stated between private parties, which is good until impeached for fraud or mistake. It is not the allowance of an ordinary claim against the government by an ordinary accounting officer, but the adjudication by the first tribunal to which the matter must by law be submitted. Until so submitted, and until so adjudicated, there is not even a prima facie liability of the government; but when submitted, and when allowed upon the adjudication, the liability is complete until in some appropriate form it is impeached. When, therefore, the count found the adjudication against the government without impeachment, the liability to pay was established. We do not decide that in the Court of Claims the adjudication of the Commissioner may not be impeached, but we do decide that until impeached it is binding, and that the affirmative of the impeachment is upon the government.” (96 U. S., 570.)
See, also, Woolner’s Case (13 C. Cls. R., 355), Bank of Greencastle Case (15 id., 222), and Real Estate Savings Bank Case (16 id., 335).
But it is said that the allowance by the Commissioner is not good, because when presented to the Secretary, according to regulation, he did not approve it. The regulation, it will be observed, requires the Commissioner, after examining a case, but “before it is finally decided to transmit the case, with the evidence in support of it, to the Secretary of the Treasury, for his consideration and advisement.” Of what use is all this, it is said, if the advice of the Secretary is not to be followed. A good deal. The influence of such a regulation is restraining as well as assisting to the Commissioner. It prevents hasty and inconsiderate action, subjects the Commissioner’s proposed action to the knowledge and scrutiny of his official superior, and gives him the benefit of the Secretary’s suggestions. But it does not attempt to coerce his final decision. It expressly pro *466 vides that it shall be submitted to the Secretary “ before it is finally decided.” Finally decided by whom 1 Certainly not by the Secretary, because that would exhibit the Secretary as making a rule upon himself, forbidding’ himself from deciding a case before he had ever seen it or even heard of it. But if the regulation had plainly provided that no tax should be refunded without the Secretary’s approval, it would have been not only in conflict with the statute, but would have, if effective, completely reversed its purpose. The Secretary would become the judge and the Commissioner the adviser. If Congress had so intended, the law should have provided that the Secretary, after consultation with the Commissioner, should order or reject the refund.
It is said the case has been held under advisement in the Department for many years, and has been considered and disapproved by several Secretaries. In a legal point of view that does not make the defendants’ case any stronger. Nor does it, in our judgment, cast any suspicion upon the claim itself, but rather the reverse. That three successive Commissioners of high character, familiar with the workings and rulings of the bureau, should take the trouble to investigate so small a claim after it had been condemned by their official superiors, and each one should arrive at the conclusion that it ought to* be allowed, is strong testimony in its favor. Indeed, the present Secretary may be said to have approved it, for he returns the claim “ without further action,” and signifies his willingness that it should be sent “ to the accounting officers for their action.” Had he considered it an improper claim he would certainly have advised against it.
Again, it is said that the evidence before the Commissioner, consisting only of the affidavits of one of the claimants and their clerk, was not sufficient to support his decision. In a court of justice one unimpeached witness is enough to support the verdict of a jury. But the Commissioner had more. His records furnished evidence that the tax had been assessed and paid. Quite likely, too, there were many circumstances connected with the case, which, with his general knowledge and experience in such matters, greatly aided him in arriving at his conclusion.
But while this much may properly be said in justification of the Commissioner’s action, we do not claim for this court nor *467 •admit for any other officer of the government the right to go ■behind a judgment, not impeached for fraud or apparent mistake, and weigh the evidence upon which it is based. In Woolner’s Case (13 C. Cls. R., 355), this court said:
“ When the law intrusts the decision of any question of fact to a designated public officer, the sufficiency of the evidence -depends upon his own judgment, and cannot be reviewed by any other officer or any tribunal. What would be sufficient ■for him might not be sufficient for other minds; and what would be sufficient for others might be quite insufficient for him. It is enough for us to know that the Commissioner acted upon some evidence which was satisfactory to himself.”
It might possibly have been safer to have authorized the Secretary or the accounting officers to review the Commissioner’s decision and allow claims which he had rejected and reject ■■claims which he had allowed, but that was a matter for Congress, and they have provided otherwise. The law as it is, however, has been in operation many years, and as yet no report of maladministration has reached the ears of the public.
The judgment of the court is that the claimant recover the ■sum of $351.