Peelle, J.,
delivered the opinion of the court:
The claims included in this action were referred to the court by the Secretary of the Navy, pursuant to the provisions of section 2 of the act of March 3, 1883 (22 Stat. L., 485), as amended by section 13 of the act of March 3, 1887 (24 Stat. L., 505).
The action in this court is predicated on Revised Statutes, section 4635, which reads:
“A bounty shall be paid by the United States for each person on board any ship or vessel of war belonging to an enemy at the commencement of an engagement which is sunk or otherwise destroyed in such engagement by any ship or vessel belonging to the United States, of which it may be necessary to destroy in consequence of injuries sustained in action, of one hundred dollars if the enemy’s vessel was of inferior force, and of two hundred dollars if of equal or superior force, to be divided among the officers and crew in the same manner as prize money; and when the actual number of men on board any such vessel can not be satisfactorily ascertained, it shall be estimated according to the complement allowed to vessels of its class in the Navy of the United States; and there shall be paid as bounty to the captors of any vessel of war captured from an enemy, which they may be instructed to destroy, or which is immediately destroyed for the public interest, but not in consequence of injuries received in action, fifty dollars for every person who shall be on board at the time of such capture.”
The claims, therefore, are founded, upon a law of Congress, and the action thereon having been commenced in this court by the filing of the petition within six years from the time said claims accrued, the court has jurisdiction under section 1 of the act oi-1887 (supra) to adjudicate the same.
The recent ruling of this court in the case of Admiral Dewey (ante, p. 172), affirmed by the Supreme Court (U. S. R., —), to the effect that the land batteries and torpedoes were not to be reckoned in determining the force of the Spanish vessels destroyed in the naval engagement in Manila Bay, eliminates from our consideration that question in this case.
The officers and enlisted men of the vessels of the American fleet who participated in the engagement at Santiago de Cuba and who claim are entitled to share in the bounty, about which there is no controversy; but as to the officers and enlisted *582 men of the U. S. S. Harvard, Resolute, and Fern, there is a controversy, and herein lies the only disputed question presented for our determination.
The facts found pertaining to the vessels named are set forth in Finding III, as follows:
“In addition to the foregoing vessels of the United States Navy, the Harvard, Resolute, and Fern, armed vessels officered and manned by the United States and under the control of the Navy, formed a part of the fleet under the command of Rear-Admiral Sampson.
“Neither of the vessels named was engaged in the destruction of the vessels of the enemy aforesaid, but they were each within signal distance of the vessels of the American fleet, or the U. S. S. New York, the flagship of the commanding-officer, that did participate in said destruction, under such circumstances and in such condition as to be able to render effective aid if they, or either of them, had .been required so-to do.”
The Revised Statutes, section 4614, provides:
“The'term ‘vessels of the Navy’ as used in this title, shall include all armed vessels officered and manned by the United States and under the control of the Department of the Navy. ”
Revised Statutes, section 4632, provides:
“All vessels of the Navy within signal distance of the vessel or vessels making the capture, under such circumstances and in such condition as to be able to render effective aid if required, shall share in the prize.”
The findings show that the three vessels named were ‘ ‘armed vessels officered and manned by the United States and under the control of the Department of the Navy” and the commander in chief of the fleet; that they, and each of them, were “within signal distance of the vessel or vessels” engaged in the destruction of the Spanish vessels, and, too, “under such circumstances and in such condition as to be able to render effective aid if required.”
Further discussion seems superfluous. It will not be necessary to consider the character of signals used -in the Navy at the time of the engagement, as the findings show that the distance, circumstances, and conditions of the vessels named were such that they were able to render effective aid if required.
That they rendered no such aid was not, so far as the record *583 . shows, their fault. They were a part of the fleet or under the command of Rear-Admiral Sampson and were subject to his order.
While it is true that the payment oij prize money or bounty for the capture or destruction of enemies’ vessels was intended by way of reward for bravery in action, the statutes, as wo have seen, contemplated vessels entitled to share who are able, but who were not required, to render effective aid. Being-armed vessels, they would, if required, have been able to render effective aid. The degree of such aid is not material. This question is met by the decision of the Supreme Court in the case of the ironclad Atlanta (3 Wall., 425).
. As there stated, “our duty is simply to announce and appty the law; and there our power ends.” Such we have endeavored briefly to do, and the result is that the officers and men of the U. S. S. Harvard, Resolute, and Fern are entitled to share in the bounty for the destruction of the Spanish vessels as aforesaid.
By the provisions of Revised Statutes, section 4642, all bounty accruing to any vessel of the United States Navy “shall be distributed and paid to the officers and men entitled thereto in the same manner as prize money; ” and by Revised Statutes-, section 4631:
“All prize money adjudged to the captors shall be distributed in the following proportions:
“First. To the commanding officer of the fleet or squadron, one-twentieth- part of all prize money awarded to any vessel or vessels under his immediate command.
“Second. To the commanding officer of a division of a fleet or squadron, on duty under the orders of the commander in chief of such fleet or squadron, a sum equal to one-fiftieth part of any prize money awarded to a vessel of such division for a capture made while under his command, such fiftieth part to be deducted from the moiety due to the United States, if there be such moiety, otherwise from the amount awarded to the captors; but such fiftieth part shall not be in addition to any share which may be due to the commander of the division, and which he may elect to receive as commander of a single ship making or assisting in the capture.
‘ ‘ Third. To the fleet captain, one-hundredth part of all prize money awarded to any vessel or vessels of the fleet or squadron in which he is serving, except in a case where the capture is made by the vessel on board of which he is serving at the *584 time of such capture; and in such case he shall share, in proportion to Ms pay, with the other officers and men on board such vessel.
“Fourth. To the commander of a single vessel, one-tenth part of all the prize money awarded to the vessel under his command, if such vessel at the time of the capture was under the command of the commanding officer of a fleet or squadron, or a division; and three-twentieths if his vessel was acting independently of such superior officer.
“Fifth. After the foregoing deductions, the residue shall be distributed and proportioned among all others doing duty on board, including the fleet captain, and borne upon the books of the ship, in proportion to their respective rates of pay in the service.”
Pursuant to the provisions of the statutes stated, judgment will be rendered in favor of the claimant, William T. Sampson, for his proportion (one-twentieth) of the bounty accruing from the destruction of the Spanish vessels in the sum of eight thousand three hundred and thirty-five dollars ($8,335).
It is ordered that the residue herein found, to-wit, one hundred and fifty-eight thousand three hundred and sixty-five dollars ($158,365), be apportioned among the remaining officers and enlisted men of the vessels claiming, to-wit: The U. S. S. New York,'Brooklyn, Oregon, Iowa, Indiana, Texas, Gloucester, Vixen, Hist, Ericson, Harvard, Eesolute, and the Fern, according to their respective rights under the statutes relating thereto.
Nott, Ch. J., was absent when this case was decided.