HVOSLET et al. v. UNITED STATES.

(District Court, S. D. New York. May 26, 1913.)

1. COMMERCE (§ 77*)—TAX ON EXPORTS—WAR REVENUE ACT—TAX ON CHARTER PARTIES.

War Revenue Act 1898 (Act June 13, 1898, c. 448, § 25, Schedule A, 30 Stat. 460), imposing a tax on charter parties, is violative of the constitutional provision declaring that no tax or duty shall be levied on any articles exported from any state.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 61–70; Dec. Dig. § 77.*]

2. INTERNAL REVENUE (§ 36*)—ACTIONS TO RECOVER DUTIES ILLEGALLY IMPOSED—STATUTES.

Act July 27, 1912, c. 256, 37 Stat. 240, provides that all claims for refunding any internal tax alleged to have been erroneously assessed or collected under the War Revenue Act, or any sums alleged to have been excessive, or wrongfully collected thereunder, may be presented to the Commissioner of Internal Revenue on or before January 1, 1914, and not thereafter; the Secretary of the Treasury being directed to pay out of the moneys of the United States not otherwise appropriated to such claimants as have presented or shall so present and establish such erroneous or illegal collection any sums paid by them, or on their account, or to the interest of the United States, under the provisions of the act. *Held,* that where petitioners paid taxes illegally assessed under the War Revenue Act, the act of 1912 gave them the right to sue the United States under the Tucker Act (Act March 3, 1887, c. 359, 24 Stat. 505 [U. S. Comp. St. 1901, p. 752]) on their demand to recover the amount so erroneously paid, as founded on a law of Congress; they not being limited to a suit against the collector.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 82; Dec. Dig. § 36.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. INTERNAL REVENUE (§ 36*)—WAR REVENUE ACT—TAXES ILLEGALLY COLLECTED—RECOVERY—PAYMENT UNDER PROTEST.

Under Act July 27, 1912, authorizing presentation to the Commissioner of Internal Revenue of claims for illegal taxes assessed and paid under the War Revenue Act, and refundment thereof by the Secretary of the Treasury, it was not essential, to the right of one having paid illegal taxes so assessed to recover the same, that they had been paid under protest.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 82; Dec. Dig. § 36.*]

Action by Frederick W. Hvoslet and others against the United States of America. On demurrer to petition. Overruled.

Haight, Sandford & Smith, of New York City, for plaintiffs.
H. Snowden Marshall, of New York City, for the United States.

NOYES, Circuit Judge. [1] The first question presented is whether the provision of the War Revenue Act of 1898, imposing a tax on charter parties, was constitutional. It is contended that it was unconstitutional as applied to vessels engaged in the export trade because it infringed the provision that "no tax or duty shall be laid on any articles exported from any state." Const. art. 1, § 9. In my opinion this constitutional question is determined by the decisions of the Supreme Court in Fairbank v. United States, 181 U. S. 283, 21 Sup. Ct. 648, 45 L. Ed. 862, and United States v. New York & Cuba Mail S. S. Co., 200 U. S. 488, 26 Sup. Ct. 327, 50 L. Ed. 569. If the War Revenue Act were unconstitutional in imposing a tax on export bills of lading and export manifests, it would certainly have been unconstitutional if it had imposed specifically a tax on charter parties for vessels in the export trade. A charter party is a document by which the cargo space of a vessel is engaged. It enables export articles to be transported. A tax upon it is a burden upon exportation as much as if it were imposed upon the articles carried in the vessel chartered. This conclusion is apparently not questioned by the government. But it is pointed out that the statute does not specifically tax foreign charter parties, but applies to all ships wherever bound, and upon this ground it is urged that the present case should be distinguished from those cited. This contention of the government amounts to this: That while a specific tax on export bills of lading or charters of vessels for the export trade may be unconstitutional, a tax on all bills of lading or all charter parties is valid. I cannot accept this contention. A tax which directly burdens exportation is as much unconstitutional as to exportation when general as when specific terms are used. Constitutional limitations are not to be avoided by generality of language. The case is not like those cited by the government where general taxes on merchandise have been held applicable to articles intended for export. Such articles are subject to the ordinary burdens until they actually become exports. But a charter party of a vessel for foreign trade is a means of export. It has relation only to exports, and it is free from taxation because a tax on it is a tax on exports. The statute as applied to charter parties

for vessels used entirely in the export trade from the United States is held to have been unconstitutional.

[2] The second question is whether Act July 27, 1912, c. 256, 37 Stat. 240, upon which the petitioner relies, gives it a right of action against the United States. While the act provides for an extension of time for the presentation of claims and authorizes payment by the Secretary of the Treasury, it does not, in terms, give a right of action in case the Secretary neglects or refuses to pay. But the broad purpose of the statute was to refund to claimants moneys illegally collected from them, and, in my opinion, it should be construed as affording the foundation for a demand against the government. It is accordingly held that the petitioners have a right to sue the United States under the Tucker Act upon their demand as founded upon a law of Congress. Indeed there would be much ground for holding that such right would exist without the 1912 statute. When moneys are wrongfully collected under a law of Congress it may well be that a claim for their return is founded upon a law of Congress. Christiestreet Com. Co. v. United States, 136 Fed. 326, 69 C. C. A. 464. See, also, Dooley v. United States, 122 U. S. 222, 21 Sup. Ct. 762, 45 L. Ed. 1074.[1]

[3] The third question is whether the petitioners, in failing to allege that the taxes sought to be recovered were paid under protest, state a cause of action. As a general rule, it is undoubtedly settled that, in order to recover internal revenue taxes illegally exacted, it must be shown that they were paid under protest. But as we have seen, the act of 1912 indicated an intention on the part of Congress to make restitution. It used broad language. It imposed no condition as to protest. It said that "all" claims for taxes illegally assessed might be presented, not merely claims where payment had been made under protest. Moreover, to make it the duty of the Secretary to pay, the claimants after presenting their claims were required to establish only "such erroneous or illegal assessment and collection." The act is, in my opinion, complete in itself and gives claimants a right of action regardless of the requirements in case of a suit under other conditions. See Campbell v. United States, 107 U. S. 407, 2 Sup. Ct. 759, 27 L. Ed. 592; Thacher v. United States (C. C.) 149 Fed. 902.

The remaining contentions of the government in support of the demurrer are regarded as not well founded.

The demurrer is overruled.

---

[1] Of course these conclusions also serve to negative the government's further supplementary contention that the petitioners' remedy is only against the collector.