Campbell, Chief Justice,
delivered the opinion of the court:
This action is brought by the executrix of Capt. Arthur B. Foster, deceased, to recover for the loss of certain property belonging to him, and is sought to be maintained under the *411 provisions of the act of March 3, 1885, 23 Stat., 350. Capt. Foster was a quartermaster on duty with his regiment, Nineteenth Infantry, United States Army, at Ponce, Porto Eico. On May 16,1899, he went aboard the U. S. transport Meade, pursuant to orders from the colonel commanding the regiment, bound for New York, to refit for service in the Philippine Islands. The vessel was taken out of the harbor at night and ran upon a reef, where she was wrecked and the articles sued for were lost or destroyed in said wreck. Other officers aboard said vessel also suffered losses from the same cause. A board of survey was ordered, which reported the extent of the losses, and among others reported that Capt. Foster’s property which was lost amounted in value to $878.60. A claim was subsequently transmitted to The Adjutant General, at Washington, on July 31, 1899, on behalf of Capt. Foster, by his attorney, and was duly referred to the Quartermaster General on August 3, 1899.
On April 9, 1901, the Quartermaster General returned the claim to Capt. Foster with the request that he “return the claim with an itemized statement certified to by him showing each article of personal property lost and the value of the same at the date of loss.” On April 16, 1901, the claim was accordingly returned to the Quartermaster General showing the articles lost or damaged, and their value, as fixed by the officer, amounted to $188.75.
On April 22, 1901, the Quartermaster General transmitted to the Secretary of War a number of claims of officers for losses occasioned by the sinking of said transport, among the claims so transmitted being that of Capt. Foster. In the communication of transmittal of said claims it was stated to be the opinion of the office of the Quartermaster General that the losses sustained by said claimants were not occasioned by any negligence or carelessness on their part, and under each officer’s name was a list of articles of personal property which had been lost, which it was stated in said communication were, in the opinion of said office, reasonable, useful, necessary, and proper for the officer to have had while in quarters engaged in the public service in the line of duty. The values affixed to the several articles belonging to Capt. Foster *412 amounted to $118.85. Said communication was, on May 7, 1901, returned by the Secretary of War to the Quartermaster General “ to file in view of statements contained in letter of Auditor for the War Department, dated May 2, 1901, and decisions of the comptroller therein referred to.” No further action was taken upon said claim until suit was brought in this court on April 5, 1905.
In the auditor’s letter of May 2, 1901, above mentioned, addressed to the Assistant Secretary of War, it is stated that “ in compliance with your verbal request ” certain memorandum copies of decisions of the comptroller, dated March 27,1901, and April 3,1901, involving the construction of said act of March 3, 1885, were inclosed, and it was shown that the ruling in the office of the Auditor for the War Department was as follows: “ It is held to be in time of war between April 21, 1898, and May 25, 1900, inclusive.” That was the period covering the insurrection in the Philippines.
The plaintiff, who sues as executrix of the last will and testament of Arthur B. Foster, deceased, claims that she is entitled to recover under- the provisions of the act of March 3,1885, which is as follows:
“Be it enacted by the Senate and Mouse of Representatives of the United States of America in Congress assembled, That the proper accounting officers of the Treasury be, and they are hereby, authorized and directed to examine into, ascertain, and determine the value of the private property belonging to officers and enlisted men in the military service of the United States which has been or may hereafter be lost or destroyed in the military service under the following circumstances:
“ First. When such loss or destruction was without fault or negligence on the part of the claimant.
“ Second. Where the private property so lost or destroyed was shipped on board an unseaworthy vessel by order of any officer authorized to give such order or direct such shipment.
“ Third. Where it appears that the loss or destruction of the private property of the claimant was in consequence of his having given his attention to the saving of the property belonging to the United States which was in danger at the same time and under similar circumstances. And the amount of such loss so ascertained and determined shall be paid out of any money in the Treasury not otherwise *413 apropriated and shall be in full for all such loss or damage: Provided, That any claim which shall be presented and acted on under authority of this act shall be held as finally determined and shall never thereafter be reopened or considered : And provided further, That this act shall not apply to losses sustained in time of war or hostilities with Indians: And provided further, That the liability of the Government under this act shall be limited to such articles of personal property as the Secretary of War, in his discretion, shall decide to be reasonable, useful, necessary, and proper for such officer or soldier while in quarters, engaged in the public service, in the line of duty: And provided further, That all claims now existing shall be presented within two years and not after from the passage of this act; and all such claims hereafter arising be presented within two years from the occurrence of the loss or destruction.
“Approved, March 3, 1885.”
The defendants contend, among other things, that this court has no jurisdiction of a claim arising under said act, and that it constitutes the accounting officers a special and exclusive tribunal to determine the questions that may arise under said act.
This court under the general statute conferring jurisdiction upon it is authorized to hear and determine all claims “founded upon any law of Congress” (sec. 145, J'ud. Code), and has many times had occasion to consider claims as to which, on the one hand, it was urged that they were based upon some general or special act, and, on the other hand, the court’s jurisdiction was denied by the defendants.
The question arose in Foster's case, 32 C. Cls., 184, where Chief Justice Nott says that the grant of jurisdiction to this court of all claims founded upon any law of Congress “is broad and general, and at first sight seems to include every claim created by statute ” ; but adds that at an early day it was held that said grant of jurisdiction did not extend to cases for which a specific jurisdiction had been provided by an earlier statute. The learned Chief Justice carefully collates and classifies in that case the cases bearing upon said question.
In Sampson's ease, 35 C. Cls., 578, this court took jurisdiction of claims for bounty under section 4635, Eevised Statutes, which were referred to the court by the Secretary *414 of the Navy .pursuant to the Bowman Act as amended by the thirteenth section of the Tucker Act, and based the right to jurisdiction upon the ground that the claims were founded upon a law of Congress.
In Commonwealth Insurance Co. case, 37 C. Cls., 532, the right of action was based upon the act of June 16, 1880, 21 Stat., 287, providing that the Secretary of the Interior shall cause to be repaid certain fees, commissions, and purchase money to entrymen whose entries had been canceled. One of the questions presented was whether the allowance by the Secretary was final and conclusive as to the facts and the law, and it was held in an opinion by Judge Peelle, following the Medbury case, that this court had jurisdiction. In the opinion it is declared to follow “that, as the decision of the Secretary of the Treasury in this case turns exclusively upon the proper construction of the act of Congress, such decision is open to review.”
In Sowle’s case, 38 C. Cls., 525, the statute under consideration there, act of June 11, 1896, 29 Stat., 448, appropriated a sum for payment of arrears of pay of volunteers “ that may be certified to be due by the accounting officers of the Treasury during the fiscal year 1897.” Though questioned by the defense, jurisdiction was taken by the court. The opinion by Judge Weldon reviews the authorities and says that “ where an appropriation is made for the payment of particular claims which may be settled by the accounting officers of the Treasury, but no exclusive jurisdiction is given to such officers to determine the right to recover upon the part of a claimant of such fund, the Court of Claims has jurisdiction ” to determine the rights of claimants to any of the appropriation.
In Sanderson’s case, 41 C. Cls., 230, it is said, in an opinion by Judge Barney, to be well settled by numerous decisions of this court that when an appropriation act directs the payment of such claims “ as may be certified to be due by the accounting officers of the Treasury ” it does not vest in them exclusive jurisdiction of such claims.
In McLean’s case, 45 C. Cls., 95, 226 U. S., 374, the question was again presented. The act there considered (33 Stat., *415 806) directed the proper accounting officers to settle and adjust to the widow of Lieut. Col. McLean “all back pay and emoluments that would have been due and payable ” to him “ as a major ” between certain dates, and the act carried an appropriation'to pay the amount found due. The court took jurisdiction notwithstanding the contention that said act constituted the accounting officers a special tribunal. The court based its ruling upon the principle stated in the Medbury case, 173 U. S., 482. Calling attention to the fact that the pay referred to in the act “ was fixed by law ” and that “the emoluments, though dependent upon contingencies incident to the service, were regulated by statute,” the court, speaking through Judge Howry, reached the conclusion that the duties imposed upon the accounting officers were administrative. This ruling was affirmed on appeal, 226 U. S., 374, 378.
In the Medbury case, 173 U. S., 492, the question was presented as to whether this court had jurisdiction upon the facts found. In the act of June 16, 1880, 21 Stat., 287, was a provision as follows:
“ And in all cases where parties have paid double minimum price for land which has afterward been found not to be within the limits of a railroad land grant the excess of one dollar and twenty-five cents per acre shall in like manner be repaid to the purchaser thereof or to his heirs or assigns.”
The act directed the Secretary of the Interior to cause to be repaid the amount and authorized him to make the payments out of any money in the Treasury not otherwise appropriated and to draw his warrant on the Treasury for that purpose. The opinion recognizes the principle that where a statute gives rights^ and provides a special but full and ample remedy for their infringement the jurisdiction is exclusive in the special tribunal, but finds no application for it in said case. It is said in the opinion (p. 497):
“ The statute creates the right to have repayment under the facts therein stated, but it gives no remedy for a refusal on the part of the Secretary to comply with its provisions. * * * A right of repayment of money theretofore paid has been given by the act, but it is only under the act that the right exists, and that right is to have the Secretary in a proper case issue his warrant in payment of the claim, and *416 until he refuses to do so no wrong is done and no case for a remedy is presented. After the refusal the question then arises as to the remedy and you look in vain for any in the act itself. * * * The procedure for obtaining the repayment as provided for in the act must be followed and when the application is erroneously refused the party wronged has his remedy, but that remedy is not furnished by the same statute which gives the right.”
It was added by the Supreme Court that if there were any disputed question of fact before the Secretary his decision in regard to those matters would probably be conclusive and would not be reviewed in any court.
In the Kaufman case, 11 C. Cls., 659, 96 U. S., 567, it was held by the Supreme Court that the Court of Claims had jurisdiction of a claim for an excess of special tax which the claimant had paid and which the Commissioner of Internal Revenue had allowed under the provisions of the statute. Payment of the allowance was refused at the Treasury. The court said (p. 569): “ The claim has been presented to and allowed by the proper officer. The claimant has pursued the statutory remedy to the end;” and as payment was refused it was held that the remedy was provided in the Court of Claims. The right had been given and a liability founded upon a law of Congress created. It was also said that the allowance of the claim by the commissioner under the statute raised an implied promise on the part of the United States to pay what was due the claimant under such circumstances, and that certainly such a claim would be “founded upon a law of Congress.”
In United States v. Savings Bank, 104 U. S., 728, affirming this court (16 C. Cls., 335) the claim had been allowed by the Commissioner of Internal Revenue, to whom an appeal had been taken. Payment was refused by the Treasury. Referring to the Kaufman case, it was said by the Supreme Court (p. 733) :
“All we said then and all we say now is that, if payment is not made by reason of the refusal of any of the officers of the department to pass or pay the claim after it has been allowed by the commissioner, the allowance may be used as the basis of an action against the United States in the Court of Claims.”
*417 In the Hvoslef case, 237 U. S., 1, which was an appeal from a district court exercising concurrent jurisdiction with the Court of Claims under paragraph 20 of section 24 of the Judicial Code (217 Fed. 680), the suit was to recover an amount which had been collected as a tax upon charter parties. The commissioner disallowed the claim and the court’s jurisdiction was attacked upon the ground that the action should be against the collector. Without comment upon the Kaufman or Savings Bank cases the Supreme Court held that the act of 1912 (37 Stat., 240), under which the action was brought, authorized and directed the Secretary of the Treasury to pay to the claimants out of moneys not otherwise appropriated, who shall present and establish such erroneous or illegal assessments, any sums paid by them and required the presentation of the claim to the Commissioner of Internal Revenue and action thereon by him, but that upon his rejection of the claim suit could be maintained in the district court, as a Court of Claims, upon the ground that the legislation which culminated in the act of 1912 “leaves no question as to the intention of Congress to create an obligation on the part of the United States in favor of those holding the described claims.” (Opin., p. 10.) This ruling was followed in Thames & Mersey Ins. Co. v. United States, 237 U. S., 19, 24.
In United States v. Emery, 237 U. S., 28, the question of jurisdiction was again presented. That case was brought in a district court, sitting as a Court of Claims, and .was to recover certain taxes paid under protest. A claim to have them refunded was submitted in due form, but was rejected. The Government’s contention was that the suit should have been against the collector. Mr. Justice Holmes delivered the opinion, and said: “As the United States has received and keeps the money and would indemnify the collector if he had to pay (Rev. Stat., 3220), the least that can be said is that it would be adding a fifth wheel to the coach to require, a circuitous process to satisfy just claims.” Holding that the claim was founded upon the revenue law, it was also held that the district court had jurisdiction because the claim was founded upon a law of Congress.
*418 From this review of decisions of the Supreme Court it is apparent that they show no disposition to extend the rule announced in the Nichols case, 7 Wall., 122, relative to the jurisdiction of the Court of Claims founded upon a law of Congress in cases arising under the revenue laws. Dooley case, 182 U. S., 222, 228. Indeed the suggestion is plain in the Emery case that the premise “that the great act of justice embodied in the jurisdiction of the Court of Claims is to be construed strictly and read with an adverse eye,” is an inadmissible one. The underlying principle deducible from the cases is that a claimant entitled to a right by virtue of an act of Congress is also entitled to a remedy for its enforcement. If the act creating the right does not furnish the remedy, it may be found in the Court of Claims. Medbury case, 173, U. S., 492, 497.
The said act of 1885 directs the proper accounting officers to examine into, ascertain, and determine the value of private property of officers and enlisted men in the military service “ which has been or may hereafter be lost or destroyed in the military service ” under stated circumstances, and it directs that the amount of such loss shall be paid out of any money in the Treasury not otherwise appropriated. The liability is “limited to such articles of personal property as the Secretary of War in his discretion shall decide to be reasonable, useful, necessary, and proper ” for the officer or soldier “ while in quarters engaged in the public service in the line of duty.” With that limitation observed, it is clear that said act leaves “ no question as to the intention of Congress to create an obligation on the part of the United States in favor of those holding the described claims.” Hvoslef case, 237 U. S., 1, 10. “We can not suppose that Congress intended in such case to make the decision of the accounting officer final when it was made on undisputed facts. If not, then there is a remedy in the Court of Claims, for none is given in the act which creates the right.” Medbury case, supra. So, also, if payment of an award by the accounting officer were refused by the Treasury this court would have jurisdiction of an action to enforce payment. Savings Bank case, supra; Kaufman case, supra.
*419 It was in keeping with these views that this court took jurisdiction in the Purssel case, 46 C. Cls., 509. In that case the claim was presented to the accounting officer within two years after the loss occurred, and it was rejected. The ground of rejection went to the legal right of the claimant to recover, and the facts were undisputed. In other words, the law was erroneously construed by the accounting officers in the court’s view, and it took jurisdiction and applied the law according to its interpretation, with the result that the claimant recovered judgment.
Subsequently, in June, 1914, the Olin B. Booth case came before the court, and judgment was rendered in his favor. An appeal was taken to the Supreme Court by the Government, which was dismissed by that court upon motion of the Solicitor General. The jurisdiction .of this Court of Claims founded upon said act of 1885, and coming properly to the court, must, in view of the foregoing authorities and the action of the Government in the Booth case, be regarded as settled. We will advert again to the Booth case in a subsequent part of this opinion.
As was said in the Medbury case, 173 U. S., 492, 498:
“We do not mean by this decision to overrule or to throw doubt upon the general principle that where a special right is given by statute, and in that statute a special remedy for its violation is provided, that in such case the statutory remedy is the only one, but we hold that such principle has no application to this particular statute, because the statute does not, in our judgment, within the meaning of the principle mentioned, furnish a remedy for a refusal to grant the right given by the statute.”
We do not hold, however, that no action by the accounting officers is necessary or contemplated by the statute. In our view, they do not act under said statute in a purely administrative or ministerial way. The statute does not, as the act in the McLean case did, merely call for the application by the accounting officers of pay and emoluments, fixed by law during a defined period, nor is it like the act considered in United States ex rel. Parish v. MacVeagh, 214 U. S., 124, 137, which involved a computation based upon fixed data. In these cases it was considered that the accounting officers *420 or the Secretary of the Treasury acted in an administrative capacity merely. In the action contemplated by the act of 1885 the accounting officers are charged with the duty of ascertaining the value of the articles of personal property lost or destroyed and with determining whether the loss or destruction occurred under one or more of “the circumstances ” stated in the act, and in a proper case to ascertain the amount which the Treasury may pay. Their action, to say the least, involves the exercise of judgment and is not merely administrative. But it is not necessarily final. If the facts are undisputed, and the law is not properly applied, or if they refuse to act on claims properly presented, or if payment of their award be refused, this court has jurisdiction to grant relief, because the right is founded upon a law of Congress. Authorities sufra.
It follows from what we have said and from the cases cited that the procedure for obtaining relief as provided for in the act of 1885 must be followed, to use the language of Mr. Justice Peckham in Medbury case, 173 U. S., 492, 497, and “ when the application is erroneously refused the party wronged has his remedy, but that remedy is not furnished by the same statute which gives him the right.” It was said in the Savings Bank case, 104 U. S., 728, 734, and the same is applicable here:
“An allowance by the commissioner in this class of cases is not the simple passing of an ordinary claim by an ordinary accounting officer, but a statement of accounts by one having authority for that purpose under an act of Congress. Until an appeal is taken to the commissioner no suit whatever can be maintained to recover back taxes illegally assessed or erroneously paid.”
It will be noted that in the cases cited above, decided by the Supreme Court, it appeared that the claimant had first sought relief through the specially designated officer. The same course should be adopted as regards claims asserted under the act of 1885. The statute designates the accounting officers as the persons to ascertain and determine the losses provided for, and the application in the first instance lies to them. The claims can be presented to them quite as conveniently and with as much facility as they can be brought *421 before the court. The manner of presenting the claims to them is necessarily simple and less expensive than by petition to the court and the aid of counsel. The claimants can adopt the channels afforded by the War Department to secure the decision of the Secretary upon the articles of property contemplated by the act and through those same channels may cause the claims to be presented. These considerations, no doubt, led Congress to designate the accounting officers as the proper persons to pass upon the claims in the first instance. If they allow the claim and it is paid, nothing more need be done. If relief be not granted, there is time to apply to the court.
The act not only requires presentation to the accounting officers or a legal excuse for not presenting it, but in terms provides that the claim “ be presented within two years from the occurrence of the loss or destruction.” This provision is not a mere limitation of time but inheres in the cause of action itself. Unless so presented, or presentation be excused, there is no right of action, because it was perfectly competent for Congress to declare that only those claims which were so presented within two years could be paid.. This does not mean that the two years is a limitation in this court if the claims are presented to the accounting officers within that time. The comptroller has held that the accounting officers can not consider claims arising under said act unless presented within two years. In view of what has been said relative to the presentation of claims we deem it proper to state more specifically than they appear in the court’s findings the facts of the Booth case and the considerations upon which it was decided.
In the Booth case it appeared, and the fact was found, that the claim had not been presented to the accounting officers. It- further appeared, however, that the claimant was one of a number of officers whose property was lost in a hurricane and flood v-hich swept over the locality where claimant was stationed at or near Ponce, P. It., in August, 1899. A board of officers was convened to ascertain the extent of said losses and inventory the property, and on January 16, 1900, made its report, certifying that claimant and *422 other officers had sustained losses of their property in said hurricane and flood and the extent of the losses. This report in due course reached the commander of the port of Ponce and the adjutant general at San Juan and was referred to the quartermaster general, United States Army, on November 2, 1900, by order of the Secretary of War. It further appeared that on December 21, 1900, the Comptroller of the Treasury held that there could be no recovery under the act of 1885 (23 Stat., 350) for losses in the storm of September 8, 1900, at Galveston “ or in the Porto Rico hurricane,” and the auditor suggested that “it is thought by this office that the only relief is by congressional legislation.” After said decision nothing further was done by either the claimant or the War Department in the matter of Lieut. Booth’s claim until July 30, 1903, when, in answer to an inquiry from him the quartermaster informed the claimant that his claim was on file in the quartermaster general’s office “ awaiting congressional legislation, as there is no law known to this office under which such claims can be paid.” The court therefore considered that inasmuch as the accounting officers had declined to allow one or more claims for losses occasioned by the same hurricane and storm, which had evidently been presented as shown by said opinion of the comptroller, it would have been a useless ceremony to present the claimant’s claim, and that under such circumstances he could come to this court. The facts were undisputed, and in the court’s view the said ruling of the comptroller was an erroneous application of the law.
The foregoing statement is made to show why the court considered that presentation of that particular claim was excused. In the case of an identically similar claim for loss occasioned by the same hurricane and storm, or it may be in the very class of claims of which Lieut. Booth’s claim was one, the accounting officers had denied relief. The court went as far in that case in waiving the necessity of presenting the claims in the first instance and within the statutory time as it is proper for it to go. It did not mean then nor does it mean now to say that presentation according to the intent of the act is not essential. Any rights which a claimant is entitled to under the act of 1885 must be found *423 within “the four comers” of the act. This court can not extend them. It can furnish a remedy in a proper case to enforce such rights. The rule must therefore be that unless the claim .is presented to the proper accounting officers “ within two years from the occurrence of the loss or destruction ” this court is without authority to afford relief. When the Booth case is urged as an exception to the rule, the facts must be similar to those we have detailed as applying in that case.
It is urged by counsel that presentation of a claim to the War Department in a given case is a compliance with the statutes, and he cites Army Regulations, 1895, paragraph 723, as showing that they contemplate a presentation of claims under said act through the War Department, the application to be accompanied if possible with the proceedings of a board of survey. Said regulation was no doubt intended to be a compliance with the act of July 31, 1894 (28 Stat., 211), but it does not and can not amend the act of 1885, which requires presentation of the claims to the accounting officers within two years from the occurrence of the loss. The “ proper accounting officers ” mentioned in the act are Treasury officials, and the Auditor for the War Department is in the Treasury Department. 28 Stat., 211. It is a convenient and, it may be said, is an orderly way by which to have said claims presented to the accounting officers, but the claimant is not limited to that method, and we have no right to limit his action in the method he chooses to adopt to properly present his claim when the statute does not so limit it. He may present his claim through the War Department, and, genernlly speaking, will no doubt do it that way, but in that case he makes the department his agent to present the claim, and not the agent of the accounting officers to receive it. Savings Bank case, 16 C. Cls., 335, 349. In the case just cited the statute required claims to be presented to the Commissioner of Internal Revenue, and the statutes provided that the Secretary of the Treasury could prescribe regulations to which the commissioner was subject in respect to the refunding of taxes. The Secretary made regulations which designated the collectors to receive *424 for the commissioner claims for refunds; and the question was whether said regulations were effective to protect the claimant who had filed his claim with the collector in conformity with the regulations. This court said (p. 349): “ To our minds it is as clear that the Secretary of the Treasury has such power, as it is that a claimant without such regulations can not make the collector or any other officers the agents of the commissioner.” This court’s ruling on the question of presentation was affirmed by the Supreme Court, 104 U. S., 728. The act under consideration does not provide for any such regulations.
The act of 1885 provides that “ the liability of the Government shall be limited to such articles of personal property as the Secretary of War in his discretion shall decide to be reasonable, useful, necessary, and proper for such officers or soldiers while in quarters engaged in the public service in the line of duty.” In our view the Secretary of War or some one for him duly authorized must make said decision before an action can be maintained. Until it is determined that the loss covers articles for the value of which the officer or enlisted man may recover there is no basis upon which it can be affirmed that there is anything to adjudicate. To define the practice it is added that we shall therefore hold in actions hereafter brought in this court claiming under said act that petitions will be demurrable which fail to show that the articles of personal property for which indemnity is claimed have been decided by the Secretary or under his authority to be of the character prescribed by the statute. Neither the accounting officers nor this court are bound by the values as they may be ascertained or estimated by the department.
The said act, as has been stated, provides for the payment of losses under the circumstances stated in the act. It has no application to losses sustained in time of war or hostilities with Indians. Its provisions extend to officers and enlisted men in the Army. The meaning of some of its provisions is not free from doubt. We deem it unnecessary in this case to discuss the act in all its bearings. It is sufficient to say *425 that under the facts above detailed the plaintiff would, in our opinion, be entitled to a judgment under the principles above announced but for the want of a proper certificate from the Secretary of War as to the articles for the loss of which claim is made.
The claim was in legal effect presented to the auditor in May, 1901, when he wrote the Secretary that the comptroller had decided that the period of the loss was in time of war. It is a reasonable inference from said letter that the Secretary’s purpose was to present the claims of those officers who had suffered losses by reason of the said shipwreck, and though “ the request ” referred to in the letter was a verbal one we can see no reason for saying it was any the less a valid presentation. No formality need attend the presentation of the claims. In our view the date upon which said losses occurred was not “ in time of war ” within the meaning of said act.
Whether under the facts developed there is shown a decision by the Secretary of War as to the articles for which •indemnity may be made is not entirely clear. The Quartermaster General’s Office certified the fact to the Secretary, who, after considering the opinions transmitted to him by the auditor, indorsed the same, “ Eespectfully returned to the Quartermaster General to file in view of the statements contained ” in the auditor’s letter. It may be a reasonable deduction from the Secretary’s action that by not disapproving the judgment of the Quartermaster General that the enumerated articles were “ reasonable, useful, necessary, and proper,” and by ordering the papers to be filed he meant to approve such judgment. We feel justified, therefore, in allowing the plaintiff an opportunity to set that fact at rest by producing a formal certificate from the Secretary or by his authority. For that purpose the cause will be remanded.
All of the judges concur.