Booth, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
The claimant, Frank M. Andrews, was a second lieutenant in the Eighth Cavalry, United States Army. As a *378 cavalry officer be was required by the Army Regulations to be mounted, and hence kept a privately owned horse which he used for that purpose. While absent on leave from his post at Fort Huachuca, Ariz., his horse lost its life under the following circumstances: The animal had been delivered by the claimant to the post quartermaster for safe keeping; this officer turned him into the quartermaster’s pasture, where he was subsequently found with a broken leg, an injury so severe that on November 29, 1910, he was shot by order of the commandant of the post.
This suit is for the recovery of $200, the alleged value of the horse involved, and is predicated upon the provisions of the act of March 3, 1885, 23 Stat., 350, which provides, in terms, as follows:
“ That the proper accounting officers of the Treasury be, and they are hereby, authorized and directed to examine into, ascertain, and determine the value of the private property belonging to officers and enlisted men in the military service of the United States which has been, or may hereafter be, lost or destroyed in the military service, under the following circumstances:
“ First. When such loss or destruction was without fault or negligence on the part of the claimant.
“ Second. Where the private property so lost or destroyed was shipped on board an unseaworthy vessel by order of any officer authorized to give such order or direct such shipment.
“ Third. Where it appears that the loss or destruction of the private property of the claimant was in consequence of his having given his attention to the saving of the property belonging tp the United States which was in danger at the same time and under similar circumstances. And the amount of such loss so ascertained and determined shall be paid out of any money in the Treasury not otherwise appropriated, and shall be in full for all such loss or damage: Provided, That any claim which shall be presented and acted on under authority of this act shall be held as finally determined, and shall never thereafter be reopened or considered: And provided further, That this act shall not apply to losses sustained in .time of war or hostilities with Indians: And provided further, That the liability of the Government un *379 der this act shall be limited to such articles of personal property as the Secretary of War, in his discretion shall decide to be reasonable, useful, necessary, and proper for such officer or soldier while in quarters, engaged in the public service, in the line of duty: And provided further, That all claims now existing shall be presented within two years and not after from the passage of this act; and all such claims hereafter arising be presented within two years from the occurrence of the loss or destruction.”
Many claims for horses lost in the military service have been presented to the accounting officers of the Government under the foregoing statute. Apparently no doubt existed as to the applicability of the statute in reference thereto until as late as July 24,1911. Without exception the claims have been allowed if the facts brought them within the law, until the date mentioned above. The only issue raised and decided by the respective Comptrollers of the Treasury prior to 1911 was as to the scope of the act with respect to the facts and circumstances of the loss or destruction, no doubt being expressed as to its extension to all privately owned property which the Secretary of War in his discretion was willing to certify as reasonable, useful, necessary, and proper for the officer and enlisted man to have. 2 Comp. Dec., 644; 3 ib., 636 ; 5 ib., 605; 11 ib., 364; 12 ib., 777; 13 ib., 838.
On July 24,1911, 18 Comp. Dec., 47, the Assistant Comptroller of the Treasury reversed all former rulings affecting so-called horse claims, and in a lengthy' written opinion held the act of March 3, 1885, inapplicable thereto. In arriving at the conclusion expressed the assistant comptroller reviews in extenso the various legislative enactments providing payment for the loss of horses in time of war, and seeks to fortify his argument by reference to statutes providing additional pay for mounted officers in the military service, asserting in connection therewith that a horse is not an “ article” of personal property within the meaning of the act. Two years later the Comptroller of the Treasury reversed in toto the above ruling, including horses therein, and gave to the act of March 3, 1885, a most liberal and comprehensive meaning, holding that “ all the law now requires is that it be lost or destroyed while in the military service and *380 owned by an officer or enlisted man in the service, where such loss is without fault or negligence on the part of the claimant.” 19 Comp. Dec., 532.
On October 20,1913, 20 Comp. Dec., 238, the Comptroller of the Treasury again reviewed at length this prolonged controversy, and finally held adversely to horse claims as coming within the purview of the act of 1885, since which time they have not been allowed.
A careful reading of the conflicting decisions as to the scope of the act of March 3, 1885, indicates unmistakably that the confusion is due entirely to reference to other and independent legislation concerning horse claims and the pay accorded mounted officers in the Army. With the various statutes from 1796 to 1888 covering losses of this class of property in view, the accounting officers of the Government considered the equities of the situation, and thereby added doubt to a seemingly perplexing situation.
The language employed in the first paragraph of the act of 1885 is decidedly comprehensive. From it alone it is not difficult to perceive a legislative intent to reimburse officers and enlisted men in the military service for the loss of private property lost or destroyed, under the circumstances mentioned, in said service. Obviously, it was designed to cover in toto the private property carried by the persons enumerated into the military service which was indispensable to the peculiar conditions of that particular governmental service; in other words, “reasonable, useful, necessary, and proper for such officer or soldier while in quarters.” If we are to exclude privately owned horses from the term “ private property,” a reason must be found outside the express language of the act, for it can not be discovered within its terms if we give to the words used their ordinary, usual, and well-known significance. If Congress did not intend to reimburse the soldier for the loss of his horse it would necessarily have used apt language to exclude this particular article of personal property. Wholesome and precise limitations appear in the act as to its application; conditions are carefully provided for invoking the aid of the law; detail did not escape legislative attention, and seemingly every feature of the loss or destruction of private prop *381 erty was carefully considered. The Congress must have known that prior legislation not only provided for but encouraged the private ownership of horses by the soldiers (35 Stat., 108). The loss of a soldier’s horse has been provided for almost from the beginning of the Government, and when language is used which comprehends indisputably a horse it can not be said that this particular kind of privately owned property is to be excluded because not specifically mentioned. The rule of statutory construction is directly the opposite. If general terms are employed in speaking of private property, it includes every kind of the class mentioned.
This court in a recent opinion by the Chief Justice in Griffis v. United States, ante, p. 170, carefully reviewed at length all the statutes, aside from the act of 1885, relating to horse claims now relied upon by the defendants to limit the scope of the act of 1885 and there held they applied only to the loss of a soldier’s horse in time of war. The act of 1885 is expressly limited to time of peace. Section 3482, Revised Statutes, has a separate and distinct field of operation totally unassociated with the act of 1885, and it would indeed be a strained construction to exclude horses from the scope of the later act because specifically and especially provided for in time of war. Congress, on the contrary, recognized the limitations of the prior legislation and in its wisdom provided for the loss of the soldier’s private property in time of peace. The additional reason assigned for this contended exclusion of one single item of private property seems equally impotent. Because Congress chooses to fix the pay of mounted officers at a higher rate than unmounted ones, or provides in terms for additional allowances where the soldier furnishes his own private mount, is purely an equitable matter with which this court and the accounting officers have no concern. The act of 1885 is an independent enactment. Most, if not all, the statutes relating to horse claims, extra pay, and allowances for privately owned horses were in existence at the time of its enactment and it can not be circumscribed by reference to extraneous legislation involving a related but entirely separate subject matter distinct from legislation providing for *382 reimbursement for horses lost or destroyed in the military service in time of peace.
In so far as the scope of the act of 1885 is concerned, the law seems to be singularly free from ambiguity. Doubt as to its meaning can only arise by recourse to other legislation upon the same subject matter or by the interjection of extraneous terms. The statute itself considered alone employs language incapable of a construction adverse to the inclusion of horses, and under these circumstances, as an elementary rule of construction, we are precluded from searching elsewhere for reasons to extend or limit its application. The words of the act itself, if free from ambiguity, furnish their own construction to be found in their ordinary and usual meaning.
It does not follow from what has been said that every horse privately owned which dies while its owner is in the military service can be paid for. Congress did not intend by the provisions of the act of 1885 to make the Government an insurer against loss or destruction of a soldier’s private property. The officer or enlisted man must be in the military service of the United States and the loss of his private property must likewise have been in the military service, not merely while in the military service but by reason of some exigency or necessity of the military service, and not incident to a horse out of as well as in that service. An analysis of the statute in this respect is most succinctly stated by Assistant Comptroller Bowers in 3 Comp. Dec., 636:
“The loss must have been caused by some exigency or necessity of the military service, such as naturally would be attributed to and flow from such service. To establish a case under this act the property must have been lost or destroyed in the military service; not merely while it was in use in that service, but because it was in that service. Being in that service must have been the proximate cause of the loss. The loss must not have been caused by the natural wear and tear or deterioration of the articles in ordinary use in the service. Inherent defects in articles, on account of which they are unable to stand the ordinary strain of the service, will prevent recovery.”
Congress by the remedial legislation in issue was providing reimbursement for property lost by reason of the peculiar *383 hazards to which it was exposed while in military service, and by so doing did not intend to cover the whole field of accidental loss or destruction in no way connected with the dangers incident to military service; simply because the soldier had carried his private mount into the military service to be used by him in military activities as his military duties required such a use does not of itself render the defendants liable for its death if the same ensued from any cause not directly connected with or incident to military service. The fact that the horse is legally in the Army does not determine liability; its loss must be directly caused by the performance of military service and in no wise attributable to the fault or negligence of the soldier. A horse dying from natural causes is obviously excluded from the benefits of the statute; one injured to such an extent that it must be destroyed, by purely accidental means in no way connected with the prevalent and well-known exigencies and dangers of military service, does not come within the act. Accidents and injuries are not peculiar to Army life. Vicious, high-strung horses, animals physically unsound and otherwise blemished can claim no immunity from the innumerable causes of mortality and injury because they are taken by their owners into the military service. Again, quoting from Comptroller Bowers’ decision, supra:
“ It must reasonably be attributable to the fact that it was held in the military service, whereby the owner was deprived, in some degree, of the control over it which he would have in civil life, and where it would be subject to dangers not ordinarily incident to its use in civil life. * * * If it be held that absence of fault or negligence is the only precedent to reimbursement, an officer would be entitled to payment for a horse dying from old age, or a uniform, side arms, or household furniture worn out in use.”
This view of the law was approved by Assistant Comptroller Mitchell in 13 Comp. Dec., 838, in which he says:
“ I do not think the said act contemplates or provides indemnity for the loss of a horse by death from purely natural causes not produced by the military service and which is incident to a horse whether he is or is not in the military service.”
This has been the uniform holding of the comptroller’s office, and to it we adhere. While the line of demarcation *384 may in some instances be difficult of ascertainment, still the intendment of tbe statute is open end apparent. The teem “in the military service” has a settled and universally accepted legal meaning and wrould not appear in the act if it was not designed to limit liability for the loss and destruction of private property occurring by reason of and in the actual performance of military duty. A contrary construction can find no support because of the difficulty of administratioh. The right and the remedy have been prescribed, and it is not the first instance wherein the application of the law depends upon the facts and circumstances of each particular case.
The petition in this case must be dismissed. The findings fail to disclose a loss within the foregoing opinion. The claimant’s horse was found in the quartermaster’s pasture with a serious fracture of its foreleg, and it had to be shot. There is absolutely nothing in the record to connect the injury with military service. How, when, or in what manner the accident occurred is left to conjecture. The one indisputable fact, apparent and conceded, is that the horse was turned out to graze and while so engaged can not be said to be in the military service. There are a variety of ways in which the accident might have happened, and certain it is that nothing peculiar or incident to military duty caused the same. There is absolutely no connection between the loss and military service.
The petition is dismissed. It is so ordered.
Before entering upon a discussion of each of the other claims now submitted for loss of a horse in the military service, we advert to the necessity of their presentation to the accounting officers and' their consideration there before we have jurisdiction to consider the claims. The statute is mandatory in this respect and the court has no jurisdiction in the premises until the claim is rejected upon undisputed facts. Newcomber v. United States, 51 C. Cls., 408; Magin-nis v. United States, ante, p. 271. It can not be said that the accounting officer’s refusal to consider these claims requires by this ruling the doing of a vain and nugatory act. On the contrary, the cases are individual ones and each case must rest upon the facts and circumstances appearing therein *385 before it can be said the accounting officers will disallow them. The correct application of the statutes depends upon each case and prior presentation and consideration is indispensable to our jurisdiction. Under the laws in force the auditor and the comptroller may reverse their opinions; it has been done in reference to this very class of cases.
Clifton R. Norton, No. 32766.
The claimant was a first lieutenant, Fourteenth Cavalry, United States Army, and was required to be mounted. The claimant’s horse was in charge of the Quartermaster’s Department, being led by an attendant through the streets of Seattle, Wash., to be placed on board the U. S. transport Dioo for shipment to the Philippine Islands. The asphalt pavements were wet and slippery and the horse accidentally slipped and fell thereon, injuring itself so severely that it had to be shot.
The claimant can not recover. The horse’s dea-th was purely accidental. It is asserted in the brief that the horse was frightened by a passing street car. Theré is no proof to support the assertion, and even so, the case is without merit. There is nothing in the record to connect the loss with the requirements of the act of 1885. Petition dismissed.
Conrad S. Babcock, No. 32586.
The claimant in this case was a captain in the First Cavalry, United States Army, a mounted officer. In July, 1910, at the Presidio, Cal., the animal died. The evidence discloses that the horse had been fed upon unwholesome forage — barley with oats, the barley having awns on it — which produced acute enteritis. Two veterinarians testify positively that death was caused by feeding the forage mentioned. A postmortem disclosed the cause of death and the nature of the illness. On November 26, 1910, a claim for the horse was filed with the auditor, but disallowed. A request for reconsideration was refused.
We think the claimant is entitled to recover in this case. It appears from the record that not only this horse but a number of others similarly situated were made ill by the unwholesome food furnished by the Government. The horse *386 was lost in the military service, i. e., the owner had to the extent of being compelled to keep the horse in Government quarters and feed him on Government forage lost that full control over him which would not have obtained in civil life. The cause of death is directly connected with the military service, an incident of a duty assumed by the United States and it can not be said the animal died from purely natural causes. It was one of the unavoidable infirmities of the military system of feeding military horses which caused the loss, and the record excludes the possibility of attributing the death of the horse to any other cause. The horse is shown to have been worth $200.
A judgment can not at this time be awarded. No certificate from the Secretary of War appears in the record. A call for the same has been allowed, and if when answered is regular in every way a judgment will then be entered. Further proceedings in the case will be suspended pending an answer to the above call. Motion for call on the department is allowed. In this connection, however, attention is called to the rule laid down in the Newcomber case, supra, as to the certificate of the Secretary of War. It is so ordered.
BoydeN E. Beebe, No. 32817.
Petition in this case is dismissed. The record is insufficient to establish the loss. Without going into a discussion as to the admissibility of the ex parte certificates filed before the accounting officers and now in the record in response to a call, the court declines to consider the case in the absence of positive testimony taken in the usual way under the rules of court.
The petition is dismissed. It is so ordered.
Samuel H. Bell, No. 32786.
The. claimant was a chaplain, First Field Artillery, United States Army, a mounted officer. On December 12, 1911, at Schofield Barracks, Tex., the horse died from cerebrospinal meningitis. The depositions disclose that just preceding the horse’s death he had been ridden by the claimant until, as *387 the witness expresses it, “he came in rather warm.” The same evening the horse became ill; next day he developed congestion of the lungs, which in the end caused the disease from which he died. It appears that the stall and stable accommodations at the barracks were not of the best, being somewhat open and exposed, but it is likewise proven that this exact condition obtained for some months prior to the horse’s demise. It is asserted that death was caused because of lack of proper stall and stable facilities. The veterinarian who attended the horse does not corroborate the single witness who so testifies. Upon the record before us the case is without merit and the petition must be dismissed. The horse obviously died from illness. At the time of its death it was not being used in the military service, performing no military duty or any duty incident to military service. On the contrary, it seems to have been returned to the stables by the claimant after a short but severe ride and its illness and death ensued almost immediately. The case is to be distinguished from a case like that considered and allowed in 12 Comp. Dec., 777, where the horse was necessarily overridden in the performance of a military duty.
The petition is dismissed. It is so ordered.
Thomas C. LoNergan, No. 82867.
The claimant was a second lieutenant, Eighteenth Infantry, United States Army, serving as battalion quartermaster and commissary, and as such required to be mounted under Army Regulations 1910, paragraph 1295. On February 27, 1918, his private mount was by proper military order shipped from Fort Mackenzie, Wyo., to Texas City, being at this time in good order and health. About the time of the arrival of the horse at Texas City a sudden and somewhat violent change in the temperature occurred, which, together with heavy rains, brought on a cold spell. The Government afforded no stable or shelter room for the horse; he was entirely unprotected in the field, except by a tent erected by the claimant himself, and under these surroundings the animal contracted pneumonia and died. The horse was reasonably worth $175 and lost its life in the military service.
*388 There is no certificate from the Secretary of War in the case. Further action will be suspended until an answer to our call in this respect is filed. It is so ordered.
Harry G. Ford, No. 32976.
The claimant in this case is not entitled to judgment. The claim was never filed before the accounting officers. The petition is dismissed.
Guy Carleton, No. 33114.
The claimant in this case failed to file his claim with the accounting officers. The petition is dismissed.
Leroy P. ColuNS, No. 33132.
A claim covering the loss alleged in the petition in this case is now pending before the auditor. The statute of limitations has not intervened to prevent its proper consideration before that officer in accord with the foregoing opinion. The court is without jurisdiction to consider the claim under the present allegations of the petition. The petition is dismissed.
Lucius T. Holbrook, No. 33135.
Petition in this case is dismissed, claim never having been filed before the auditor. It is so ordered.
Hay, Judge, Barney, Judge, and Campbell, Chief Justice, concur.
Downey, Judge, took no part in the decision of these cases.