Booth, Chief Justice,
delivered the opinion of'the court:
The agreed statement of facts herein shows that plaintiff, an Army officer, was on duty at Jeffersonville Quartermaster Depot, Jeffersonville, Ind. pthat he occupied a house in Jef-fersonville. because public quarters were not available, and was paid rental allowance therefor. By proper orders, plaintiff was on duty continuously during the time the Ohio B-iver was in flood, arid, as found by the War Department, was engaged in saving human life and property of' the United States. While so engaged in such' military duties his own property, which was. “required to be possessed and used by plaintiff or was reasonable, useful, necessary, and proper for the plaintiff to have in his possession in the public service in the line of duty while in quarters or in the field,” was lost or destroyed. Plaintiff asserted a claim of $778.50, and the Board appointed by the Secretary of War recommended the allowance of the sum of $618.50, which recommendation was approved by the Secretary of War.
This suit is to recover, the sum so approved, under the provisions of the act of March 4, 1921, 41 Stat. 1436. The Comptroller General held that under the conditions recited *163 the property was not lost “in the military service” and denied plaintiff’s claim. Defendant cites the cases of Andrews, 52 C. Cls. 378; Curran, 65 C. Cls. 26; and Morrison, 87 C. Cls. 606.
The Andrews case involved the loss of a horse. That case was decided upon the fact that the horse’s death could not be attributed in any way to the military service. After reciting the cause of the horse’s death, and referring to vicious, high-strung horses brought into the military service and the likelihood of mortality in such cases, the court comments as follows :
The term “in the military service” has a settled and universally accepted legal meaning and would not appear in the act if it was not designed' to limit liability for the loss and destruction of private property occurring by reason of and in the actual performance of military duty. * * * There is absolutely nothing in the record to connect the injury with military service. * * * The one indisputable fact, apparent and conceded, is that the horse was turned out to graze and while so engaged can not be said to be in the military service [p. 384],
The case of Curran, sufra, involved the loss of personal property under the act of March 4, 1921, supra, the act in controversy in the instant case. Curran being ordered to overseas duty delivered his household goods to a quartermaster for packing and storing. Upon his return to this country it was discovered that one box containing these goods Avas missing. It did not appear how the loss occurred. The court held that the officer could not recover because (1) the property lost did not come within the meaning of the provisions of the statute which define the class or character of property for the loss of which payment may be had; and (2) because it was not shown that at the time of such loss plaintiff “was engaged in authorized military duties in connection therewith.” The court, however, did make the fol-lowing comment:
If the court should hold that the contention of plaintiff in this case is correct it would result in committing the Government to the principle of insurance against the loss of private property stored without charge in a *164 Government warehouse and lost by the negligence of the Government’s agent in charge of such property, which was never the intention of Congress.
In the case of Morrison, supra, the property was in the Officer’s quarters on a Government reservation and was destroyed by fire at a time when plaintiff was on duty elsewhere in connection with the convening of a board of investigation. The court held against the officer because at the time of the loss he was neither engaged in saving human life or Government property nor in authorized military duty in connection with the event which caused the loss. The court, commenting upon the holding in the Curran case, supra, that the words “in connection therewith” in the statute meant in connection with the property so lost, said (p. 610), “we believe that the court could have gone further and not restricted this meaning to the loss of the property of an officer but to the catastrophe or event which produced and which was the cause of the loss.”
The case of Purssell, 46 C. Cls., 509, was brought under the act of March 3, 1885, 23 Stat. 350, which provided, among other things, for the reimbursement of Army officers whose private property was destroyed “without fault or negligence” on their part, and where loss was “in consequence of his having given bis attention to the saving of tlxe property belonging to the United States which was in danger at the same time and under similar circumstances.”
It appears in this last-mentioned case that before the officer’s departure on leave he packed his personal property and stored it in his office room in charge of a clerk in an office building in San Francisco. While on leave the property was destroyed by earthquake and fire. The claim was disallowed by the Auditor for the War Department because at the time the officer was not engaged in saving Government property but was absent on leave. Judgment was given plaintiff on the groimd that under the statute the officer’s absence on leave at the time of the loss of his military property would not exclude him from the relief given by the statute if the loss or destruction was without fault or negligence on his part. The act of 1885 granted relief to men in the military service for private property “lost or *165 destroyed in the military service.” In giving judgment in this case, therefore, the court must have determined that property stored in an office building was “in the military service.”
In the cases mentioned, both under the act of 1885 and the act of 1921 the statute required the loss to be “in the military service,” yet there seems to have been no contention in any one of them concerning this language. In the instant case the plaintiff met the requirement of the statute in all particulars; i. e., (1) he was engaged in saving human life; (2) he was engaged in saving Government property; and (3) he was engaged in military duties in connection with the flood which caused the loss herein (Morrison case, supra).
The sole defense in the case is that because the property was in a private building and not on Government property in public quarters it was not “in the military service” within the meaning of the act. We think the act is directed to such occasions where plaintiff, being by orders stationed elsewhere, is unable to give his personal attention to the saving of his own property. Under the facts in this case it would have made no difference whether he was on duty elsewhere or with his property, so far as saving of the property was concerned. The loss was caused by an unprecedented rise in the Ohio River, over which plaintiff had no control, and in view of the known facts in connection with this flood it is obvious that his presence with his property could not have resulted in preventing the loss.
Plaintiff’s property was not in public quarters because there were no public quarters available, which necessitated his renting quarters outside the reservation, for which he was paid commutation. The contention that because the property was not on the reservation it was not “in the military service” not only conflicts with the Purssell case, where the property was in an office building at the time of the earthquake and fire, but it ignores the obvious fact that plaintiff’s property was in private quarters because public quarters, to which he was entitled under the law, were not available for the purpose.
When is property “in the military service”? A number of situations readily come to mind where property of an *166 Army officer must of necessitj? be elsewhere than in public quarters. The act itself contains no language which can be construed as meaning that unless the property is within the boundaries of a Government reservation it is not in the military service.
The Secretary of War in this case certified that the articles of property were reasonable, useful, necessary, and proper for plaintiff to have in his possession in the public service in the line of duty, while in quarters or in the field; that the loss occurred without fault or negligence of the plaintiff; and that the amount recommended by the Chief of Finance is approved and. certified for payment. The Comptroller General, however, disagreed with the Secretary of War and held that “Where the officer is residing in a civilian community and the household goods are lost in a common catastrophe, affecting all residents alike in the same vicinity, there is no authority to reimburse the owner from appropriated funds as for a loss or destruction of his goods in the military service.”
From the Morrison case it appears that the act requires that before plaintiff can obtain relief it must be affirmatively shown that he was on duty under the conditions prescribed, and if be qualifies in that respect he is entitled to compensation. It does not seem possible to read into the act a meaning that Congress intended that officers whose property was lost while stored in public quarters should be compensated, but that officers whose property was lost while stored in private quarters, when no such public quarters were available, should not be paid. If the property was.“in the military service” in the one case it certainly was in the other. We think the criterion should be the character of the property, the conditions under which it was lost, and the assignment of plaintiff at the time, not where the property was located. The plaintiff is entitled to recover. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Green, Judge, concur.